978 So.2d 568 (2008)
Bing BISHOP, as Agent for Bing Bishop Construction Co., Inc. and Bing Bishop Construction Company, Inc., Plaintiffs-Appellees
v.
Ken SHAW, Cindy Shaw and Kenworths, Defendant-Appellant.
No. 43,137-CA.
Court of Appeal of Louisiana, Second Circuit.
March 12, 2008.
*570 Lunn, Irion, Salley, Carlisle & Gardner by Ronald E. Raney, Shreveport, Charles L. Cook, Monroe, for Appellant Ken Shaw.
Crawford & Joyce by Brian E. Crawford, Monroe, for Appellee.
Before WILLIAMS, STEWART & PEATROSS, JJ.
PEATROSS, J.
Bing Bishop, as agent for Bing Bishop Construction Co., Inc., and Bing Bishop Construction Co., Inc. (collectively herein "Plaintiff"), filed suit on an open account against Defendant, Ken Shaw.[1] Plaintiff alleged that Defendant failed to pay for construction work completed on two properties. After a bench trial, the trial court found that Plaintiff was entitled to $91,130.47. Defendant appeals this judgment. For the reasons set forth below, we affirm the judgment of the trial court.

FACTS
Plaintiff and Defendant entered into a fixed amount contract for renovations to two adjacent residential properties owned by Defendant. One property was Defendant's residence, and he used the adjacent property as a business office. Under the original fixed amount contract, Defendant hired Plaintiff to build a two-stall garage at the back of the residence. During the construction, the scope of the project was expanded with several changes to the original specifications. Plaintiff extensively repaired an existing sunroom, including the roof, and added a new room to the second story. The garage was completed and tied to the house and part of the adjacent house was removed to make room for a new driveway that ran between the two houses back to the new garage. The adjacent house was then re-enclosed and bricked. In total, Plaintiff submitted a list of seventy-six projects he completed in addition to the original fixed amount contract. *571 The additional work was done pursuant to an oral contract on a cost-plus 15 percent basis. Plaintiff was to keep track of his costs associated with the project and Defendant would reimburse him for those costs plus pay him 15 percent of those costs as profit.
The first invoice from Plaintiff was for $48,506. Defendant paid this bill with two checks totaling $55,000, leaving a credit of $6,494. Defendant received a second invoice for $162,910. This second invoice stated that it was for "labor, material, equipment, taxes and insurance for all work to date" which was May 25, 2005. This figure included the previously paid amount of $60,000. The invoice was generated by Plaintiff at Defendant's request so that Defendant could submit it to his bank to finance the construction.
The unpaid balance of $107,910 was then separated into four separate invoices at Defendant's request. Defendant paid the entire $162,910 amount by July 1, 2005. He testified that he understood that he had paid for all work completed before May 25, 2005. Defendant contends that he was unaware that Plaintiff had any further outstanding accounts payable from third party subcontractors for work performed prior to May 25, 2005.
Defendant also contends that he spoke to Plaintiff on or about July 1, 2005, and Plaintiff advised him that the project would probably cost $8,000 to $20,000 more to complete. Plaintiff denies having that conversation, but testified that he had told Defendant that there was $20,000 to $30,000 more construction work to be done. Plaintiff testified that this amount did not include work that was already performed, but not yet billed to Defendant. Shortly after this conversation, an invoice for the remaining cost of $85,304 was delivered to Defendant. Defendant refused to pay and Plaintiff's attorney sent Defendant a demand letter for $92,105.95, representing the outstanding balance for the project. Defendant again refused to pay and Plaintiff filed this suit on an open account seeking payment and attorney fees. After considering applicable credits, Plaintiff reduced his demand to $91,130.47. This amount was ultimately awarded by the trial court.
Plaintiff filed a motion for summary judgment with various documents attached, including invoices from third party subcontractors who worked on Defendant's project. The trial court denied Plaintiff's motion for summary judgment. Defendant anticipated that Plaintiff would attempt to prove his claim with the invoices received from subcontractors or materialmen and filed a motion in limine seeking to exclude the invoices as hearsay. The trial court denied the motion. Defendant also filed a motion compelling discovery, arguing that Plaintiff's answers to his interrogatories were evasive and incomplete. The trial court denied this motion.
As previously stated, after a bench trial, the trial court held that Defendant was liable to Plaintiff for $91,103.47 plus interest from the date of judicial demand until paid and for all costs of court. In addition, the trial court denied Plaintiff's motion to assess fees seeking attorney fees and also denied Defendant's motion for new trial. Defendant appeals.

DISCUSSION
Our review of the factual findings in this case is governed by the manifest error/clearly wrong standard of review. An appellate court may not set aside a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be *572 disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id.; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly wrong. Rosell, supra; Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra. Where the fact finder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
In a cost-plus contract, the owner agrees to reimburse the contractor for the costs of material and labor and to pay a percentage of those costs as his profit. Burdette v. Drushell, 01-2494 (La.App. 1st Cir.12/20/02), 837 So.2d 54, writ denied, 03-0682 (La.5/16/03), 843 So.2d 1132. Under a cost-plus contract, the contractor may charge only those costs that are shown to be reasonable and proper. Ellis Millwork, Inc. v. Frees, Inc., 493 So.2d 696 (La.App. 2d Cir.1986). When the owner denies his indebtedness to the contractor, the contractor has the burden to itemize and prove his costs. Burdette, supra; Ellis, supra.

Discovery
Through a number of interrogatories, Defendant requested that, for each invoice, Plaintiff provide the dates of the services rendered, the type of actual service rendered, the person or entities who rendered the service and the contact information for that person or entity. Plaintiff responded that all relevant invoices containing the requested information were attached as exhibits to Plaintiff's previously filed motion for summary judgment. Plaintiff further asserted that he provided all materials, supervision and services for the project. In a motion to compel discovery, Defendant argued that these responses were insufficient. The trial court denied the motion and Defendant appealed that ruling.
The trial court has broad discretion in regulating pretrial discovery, and its decision will not be disturbed on appeal absent a clear abuse of that discretion. Bell v. Treasure Chest Casino, L.L.C., 06-1538 (La.2/22/07), 950 So.2d 654; Moak v. Illinois Central Railroad Company, 93-0783 (La.1/14/94), 631 So.2d 401; Wells v. State, Dept. of Public Safety & Corrections, 41,836 (La.App. 2d Cir.3/7/07), 954 So.2d 234. That discretion may be abused when the trial court denies a motion to compel seeking information that is properly discoverable, especially where the examination of the requested information may be the only means by which a party can defend the claims against it. Francois v. Norfolk Southern Corp., 01-1954 (La. App. 4th Cir.3/6/02), 812 So.2d 804.
In the case sub judice, Defendant not only received the requested information as an exhibit to Plaintiff's motion for summary judgment, but also could have obtained any further clarification through deposing Plaintiff or his employees. We do not find, therefore, that the trial court abused its discretion in denying Defendant's motion to compel discovery.

Hearsay Evidence
Plaintiff supported his claim with copies of the invoices he received from the third parties that supplied the work and materials for the construction. During his testimony, Plaintiff went through the invoices and testified that they were related to the project for Defendant, that they *573 were received and paid by his business and that he had sought reimbursement from Defendant. For some of the invoices, he gave a more detailed description of the related work. Plaintiff's bookkeeper testified that, when the company receives a bill from a third party, she enters the amount into the computer coded by category and then stamps the invoice as "entered" with the date. She then files the bill until Plaintiff pays bills, at which time she stamps the bill as paid and writes on the bill the number of the check used to pay it.
As mentioned above, Defendant filed a motion in limine to exclude these third party invoices as hearsay. The trial court denied the motion. Defendant argues on appeal that these invoices are inadmissible hearsay and do not fall under the business records exception to the hearsay rule.
La. C.E. art. 803(6), the business records exception to the hearsay rule, provides in pertinent part that:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule.
Defendant argues that this language requires that the document must be created by the party introducing it and that a document merely received and processed by a business does not qualify.
Third party bills and invoices are admissible to prove the amount of damages. Ollis v. Miller, 39,087 (La.App. 2d Cir.10/29/04), 886 So.2d 1199; Fidele v. Cresent Ford Truck Sales, Inc., 00-1934 (La.App. 5th Cir.4/11/01), 786 So.2d 147; Carroll v. Coleman, 27,861 (La.App. 2d Cir.1/24/96), 666 So.2d 1264. Third party invoices that are received and maintained in the course of business are considered incorporated business records and are admissible under the business records exception to the hearsay rule under circumstances which demonstrate trustworthiness. Burdette, supra.
In Burdette, supra, the plaintiff contracted with the defendant on a cost-plus basis for construction services. He supported his testimony with invoices from third parties to prove amounts of cost he had incurred. Like the case sub judice, the plaintiff testified as to the procedure his office used to process the invoices after receipt. After a thorough discussion, the court in Burdette, supra, rejected the exact argument made by Defendant in the case sub judice. That court determined that the wording of La. C.E. art. 803(6) did not preclude the introduction of incorporated business records originally generated by another business, if properly authenticated and determined to be trustworthy by the trial *574 court. We agree with the reasoning of Burdette and find it applicable.
To the contrary, we find the case of Cole Oil & Tire Co., Inc. v. Davis, 567 So.2d 122 (La.App. 2d Cir.1990), relied on by Defendant, to be factually distinguishable from the instant case. In Cole, the plaintiff had purchased a company to whom the defendant arguably had a debt. The plaintiff attempted to prove the debt with the records of the prior company. The plaintiff did not present any testimony reflecting firsthand knowledge of how the records were made or kept by the prior company. The court found that the plaintiff failed to present a qualified witness to establish the business records exception.
Here, Plaintiff did not seek to introduce the records of a third party, but, instead, argues that, through the processing and maintenance of those invoices within his business, they are his business records. Through the testimony of Plaintiff and his bookkeeper as to their process of receiving, entering, categorizing and charging invoices for services and material, Plaintiff showed that the third party invoices were incorporated into his business records. Under Burdette, supra, we find, therefore, that the trial court did not abuse its discretion in admitting the third party invoices.

Amount of Damages
Defendant further contends that the damage award of $91,130.47 was not supported by sufficient evidence. In particular, Defendant argues that the invoice dated May 25, 2005, should be a cap on any amount he owed for work prior to that date. That invoice contained the phrase "labor, material equipment, taxes, and insurance for all work to date" under the heading "description." Defendant further contends that the damages should be capped at $20,000 for worked performed after May 25, 2005, based on his conversation with Plaintiff estimating additional expenses.
The trial court found that "no `conversion' to a `fixed' nor `capped' contract was ever manifested or perfected between the parties." Plaintiff's testimony was consistent that, after agreeing to charge the multiple additional projects on a cost-plus basis, he never agreed to a cap or fixed price. He further explained that the May 25, 2005 bill was prepared as an accommodation to Defendant to fax to his bank and that he never contemplated that it reflected a total amount on the work performed. He explained that, after the May 25, 2005 bill was generated, he continued to receive bills from subcontractors for work that was performed prior to May 25, 2005, and he charged Plaintiff for those amounts only after he received the subcontractors' bills. We cannot say that it was manifest error for the trial court to find that the cost-plus contract was never converted to a fixed or capped contract and to award Plaintiff the costs reflected on all of the subcontractors' invoices.
In addition, Defendant argues that Plaintiff failed to adequately prove specific charges. Particularly, he contends that Plaintiff failed to prove the amount of supervisory fees because the only evidence offered was Plaintiff's own testimony. Plaintiff testified that he divided up the costs for each of his supervisors, such as their salary and vehicle expenses, among the various projects on which they were working. His supervisors did not document their time, so Plaintiff estimated the approximate proportion of each supervisor's time spent on Defendant's project. Defendant asserts that this testimony is subjective and, therefore, insufficient. Moreover, Defendant insists that he never contemplated that the oral contract entitled Plaintiff to charge for the cost for his supervisors plus 15 percent.
*575 Defendant cites to the factually similar case of East Contract Supply, Inc. v. Petite Paree Fashions, Inc., 250 So.2d 839 (La.App. 4th Cir.1971). In that case, the plaintiff-contractor sought to recover under a cost-plus contract supervisory fees for the time that both he and one of his employees spent on the project. The plaintiff argued that the defendant had agreed to the inclusion of such supervisory costs as evidenced by his payment of a prior invoice with a supervisory charge. The court noted that:
In interpreting contracts, where the issue is what are the terms of a verbal agreement, the fact that informed and experienced persons do not usually bind themselves to unjust and unreasonable obligations is to be considered in arriving at the intent of the parties.
Id., citing authority that is now La. C.C. arts. 2045, 2046 & 2049. The court went on to agree that certain items, including the supervision by the business owner, would normally be considered part of the general overhead and administrative expenses of the contractor to be covered out of the additional percentage added to the costs. The court adopted and quoted the reasoning of the trial court disallowing the charge for supervision performed by the contractor as not contemplated by the oral contract. The trial court allowed, however, and the appellate court agreed, that the supervision performed by the contractor's employee was a cost that could be covered. The contractor had charged the defendant that employee's full monthly salary, but the trial court reduced the charge by half as the record reflected that the employee only spent half his time on Defendant's project.
In the case sub judice, Plaintiff testified that, while both he and his son performed supervisory work on Defendant's project, he did not charge for the time of either. He charged Defendant only for the cost of his supervisors in proportion to the amount of their time spent on Defendant's project. He repeatedly testified that it was in his interest to be fair to his customers. While the only evidence of the supervisory charges is Plaintiff's testimony that the charged amount was fair and reasonable, if believed, this testimony is sufficient. The trial court's assessment of the credibility of a witness is subject to great deference. Rosell, supra. We find no manifest error in the trial court's concluding that supervisory costs were contemplated in the cost-plus contract as a cost and that Plaintiff sufficiently proved those costs.
Defendant also advances much the same argument against the inclusion of insurance as an item of damages. For the same reasons set forth above, we find no manifest error in the trial court's inclusion of insurance costs plus 15 percent in the award.
While Defendant attacks several aspects of Plaintiff's explanation for the damages award, we do not find that the trial court manifestly erred in accepting Plaintiff's testimony. Plaintiff's testimony, along with the submitted third party invoices, sufficiently support the award of the trial court.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed. Costs of appeal are assessed against Defendant, Ken Shaw.
AFFIRMED.
NOTES
[1] Defendants Cindy Shaw and Kenworths were dismissed by the trial court.