MARC E. JOHNSON, Judge.
 

 _JjThe Plaintiff, Treen Construction, Inc., appeals a judgment in favor of the Defendant, Charles Reasonover, in a construction contract dispute. We affirm.
 

 In November of 2005, the Plaintiff began work on the Defendant’s home to repair damages sustained by Hurricane Katrina.
 
 *935
 
 Pursuant to an oral agreement, the Plaintiff billed the Defendant for the costs of the job, plus 10% overhead and 10% profit. The Defendant paid approximately $61,000 during the course of the work, but refused to pay the last five invoices.
 

 On October 13, 2006, the Plaintiff filed a lien in the amount of $5,647.34 against the property, and also filed a petition to enforce the lien. The Defendant filed an answer and reconventional demand contending that no further amounts were due, and seeking damages suffered as a result of errors and overcharges in the amount of $11,613.07.
 

 The hen was subsequently dismissed because the contract was not in writing. A judge trial was held on the merits of the claims on November 6, 2008, after which judgment was rendered in favor of the Plaintiff for $721.43. The trial lajudge disallowed the Plaintiffs charges of $4,925.91 that were related to the kitchen cabinets, the granite counter tops, the patio doors, and for double billing the Defendant for profit and overheard from his son’s company. On the reconventional demand, the trial judge awarded the Defendant $4,312.73.
 
 [1]
 

 On appeal, the Plaintiff asserts that the trial judge erred in denying all but $721.43 of its claim. It further asserts that the trial judge erred in granting refunds on invoices that the Defendant previously paid, and thus waived his right to contest the payments, and in granting the Defendant’s reconventional demand regarding the patio doors, cabinets, and countertops. He also asserts that the trial judge erred in disallowing the profit and overhead charge for the SW Louisiana Permit job, in awarding costs for the cost of cleaning air conditioning ducts, and in awarding costs to replace the security system.
 

 Contractor’s burden of proof
 

 The trial judge found that the Plaintiff failed to produce any invoices to support its claims. The Plaintiff argues that the invoices were received into evidence at the trial in connection with the testimony of John Treen.
 

 The standard of review in a cost plus contract case is manifest error, or whether the findings of fact were clearly wrong.
 
 Bishop v. Shaw,
 
 43,137, p. 3-4 (La.App. 2 Cir. 3/12/08), 978 So.2d 568, 571-572;
 
 Burdette v. Drushell,
 
 01-2494, p. 5 (La.App. 1 Cir.12/20/02), 837 So.2d 54, 59,
 
 writ denied,
 
 03-0682 (La.5/16/03), 843 So.2d 1132.
 

 In reviewing the case for manifest error, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that |4its own evaluations and inferences are as reasonable.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989);
 
 Himel v. State ex rel. Dept. of Transp. and Development,
 
 04-274, p. 8 (La.App. 5 Cir.1/12/04), 887 So.2d 131,137,
 
 writ denied,
 
 04-2802 (La.3/18/05), 896 So.2d 999. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether its conclusion was a reasonable one.
 
 Stobart v. State, Through DOTD,
 
 617 So.2d 880, 882 (La.1993);
 
 Himel,
 
 04-274 at 8, 887 So.2d at 138;
 
 LeBlanc v. Baxter,
 
 05-33, p. 19 (La.App. 5 Cir. 5/31/05), 905 So.2d 415, 426. Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Stobart,
 
 617 So.2d at 882;
 
 Himel,
 
 04-274 at 8, 887 So.2d at 138. Only where the documents
 
 *936
 
 or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness’s story, may the court of appeal find manifest error, even in a finding purportedly based upon a credibility determination.
 
 Rosell,
 
 549 So.2d at 844-45;
 
 Himel,
 
 04-274 at 8, 887 So.2d at 138.
 

 In a cost plus contract, the owner agrees to reimburse the contractor for the costs of material and labor and to pay a percentage of those costs as his profit.
 
 Bishop,
 
 43,137 at 5, 978 So.2d at 572;
 
 Burdette,
 
 01-2494 at 5, 837 So.2d at 59. Under a cost plus contract, the contractor may charge only those costs that are shown to be reasonable and proper.
 
 Bishop,
 
 43,137 at 5, 978 So.2d at 572;
 
 Burdette,
 
 01-2494 at 5, 837 So.2d at 59. When the owner denies his indebtedness to the contractor, the contractor has the burden to itemize and prove his costs.
 
 Bishop,
 
 43,-137 at 5, 978 So.2d at 572;
 
 Burdette,
 
 01-2494 at 5, 837 So.2d at 59.
 

 |,-,The Plaintiff relies on the unpublished case of
 
 Meg-A Builders, L.L.C. v. Maggio,
 
 2008 WL 5377614, 4 (La.App. 1 Cir. 12/23/08). There, the court summarized:
 

 Meg-A Builders responded to the Maggios’ letter requesting an itemization of the expenses with an invoice that detailed labor and materials. The trial court evaluated each item of expense and deducted the markup of forty percent on labor for which Meg-A Builders failed to offer evidence to support. While the Maggios complain that the itemization provided to them by Meg-A Builders and introduced into evidence does not set forth the actual material lists, receipts, check stubs showing payment, labor time records, invoices of subcontractors, or other records as proof to substantiate the charges billed to them,
 
 they neither demanded such through discovery nor presented evidence challenging Meg-A Builders’ testimony and itemization of the expenses. At trial, the primary issue was whether the parties had entered into a costs plus contract.
 
 [Emphasis added.]
 

 The court found no manifest error in the judgment granting the contractor relief. However, the dissent disagreed because the Plaintiff failed to present any evidence proving that it paid the costs listed in the invoice sued upon. It cited
 
 Burdette.
 
 It also cited
 
 M. Carbine Restoration, Ltd. v. Sutherlin,
 
 544 So.2d 455, 458-59 (La.App. 4 Cir.1989),
 
 writ denied,,
 
 547 So.2d 355. In that case, the Fourth Circuit Court of Appeal stated:
 

 Once the existence of a cost-plus contract has been established, the contractor also has a duty to submit an itemization of each and every expenditure made during the course of the project because there is an implicit agreement between the parties that the costs will be reasonable. Presentation of invoices and statements of accounts,
 
 accompanied by proof of payment,
 
 is the proper method of proving the cost of improvements. Proof of payment can be established by presentation of invoices marked “paid.” [Emphasis added.]
 

 Id.,
 
 544 So.2d at 458-59.
 

 We agree with the decisions in
 
 Burdette, Bishop,M. Carbine Restoration, Ltd.,
 
 and the dissent in
 
 Meg-A Builders, L.L.C.
 
 The contractor has the burden of producing corroborating evidence to support the invoices for alleged costs incurred in a cost plus contract.
 

 pin this case, the Plaintiff did not introduce the invoices or any other evidence to support the charges at trial. The invoices were introduced by the Defendant only to show that there was a cost plus contract. John Treen (Treen) testified that he never maintained any records sup
 
 *937
 
 porting the charges because the Plaintiff charged either its cost or what the insurance company paid for the repairs.
 

 Furthermore, we also note that the invoices are not reliable. Seven electrical work invoices describe the same work, indicating it had been recalculated three times. One particular invoice was for a sink, which had to be redone because the Plaintiff overcharged the Defendant. Another invoice was changed after receiving the Plaintiffs typed complaints, for which the Plaintiff gave the Defendant a credit of over $1,100 (for a charge that was not yet at issue).
 

 As found by the trial judge, the Plaintiff had the burden of proving each and every item of expense and should have presented evidence supporting every invoice. See,
 
 Bishop,
 
 43,137 at 5, 978 So.2d at 572;
 
 Burdette,
 
 01-2494 at 5, 837 So.2d at 59;
 
 M. Carbine Restoration, Ltd.,
 
 544 So.2d at 458. Although the invoices itemize various items, they are self-serving. Without any support for the amounts listed, we find that the Plaintiff failed to bear its burden of proving that the charges were reasonable and proper. Thus, the trial judge did not err in rejecting the total amount of the Plaintiffs claim.
 

 Waiver
 

 The Plaintiff next contends that the trial court erred in granting Defendant’s reconventional demand to the extent that it granted refunds on invoices that the Defendant had previously paid. The trial judge awarded the Defendant the damages documented at trial that were caused by the mistakes and misrepresentation of the Plaintiff, minus the claim for the storage of certain rugs. |7The Plaintiff contends that by previously paying those invoices, the Defendant admitted the correctness of the totals due and cannot now challenge those invoices.
 

 The Plaintiff asserts that “where an account is delivered to the debtor and the debtor makes no objection thereto within a reasonable time, the failure to object is considered as an admission of the correctness of the account.”
 
 Red Barn Chemicals, Inc. v. Lassalle,
 
 350 So.2d 1315, 1317 (La.App. 3 Cir.1977).
 

 The Plaintiffs argument is one of estop-pel. Estoppel is a type of waiver, which might, depending on the facts, bar the Defendant from challenging the invoices. Estoppel, however, is an affirmative defense that must be pleaded specially in the answer. La. C.C.P. art. 1005. The Plaintiffs answer to the reconventional demand does not contain an affirmative defense of estoppel. The failure to do so operates as a waiver of the Plaintiffs defense that the Defendant is estopped from challenging charges that he paid. Consequently, we will not consider the argument.
 
 [2]
 

 Profit and overhead refund
 

 The Plaintiff next claims that the trial judge erred in awarding the Defendant a refund on the profit and overhead charges related to the patio doors, cabinets, and countertops. It argues that the mark-up for profit and overhead is compensation for administrative supervision on the project, not for labor performed by the general contractor at the site. Furthermore, it contends that the Defendant knew the price of the patio doors and cabinets, and there is no evidence showing he did not know the price of the counters when they were ordered. The Plaintiff argues that it is irrelevant whether the Defendant could have gotten the items cheaper.
 

 |sThe Defendant testified that the Plaintiff installed cabinets, granite countertops, and patio doors that were more expensive than the Defendant expected. The Defendant relied on the Plaintiffs representa
 
 *938
 
 tions that the Plaintiff could obtain better quality cabinets and countertops at a lower price than the Defendant would pay at Lowe’s or Home Depot, because of the contractor’s discount. This dissuaded the Defendant from shopping prices. Yet, the Plaintiff charged much more than the Defendant would have had to pay for similar quality items at retail suppliers. Treen also told the Defendant that delivery of some of the items would be faster, which was not the case.
 

 In addition, the Defendant noted that the Plaintiff placed the raised counter in the kitchen too far out so that it impedes the aisle, and one of the kitchen drawers had to be fixed because it would not close.
 

 The evidence also shows that there were numerous delays in the project either unexplained or because the Plaintiff made mistakes. The kitchen cabinets’ spaces were measured wrong, causing the Plaintiff to remove and reinstall them correctly. The Plaintiff also failed to install an electrical outlet above the granite, requiring the electrician to return. In addition, the Plaintiff ordered the wrong type of patio doors which the Defendant accepted because he did not want to start that project over.
 

 The Defendant complained to the Plaintiff about the delays because he was not able to live in his house until the repairs to the damages from the hurricane were completed. He noted that most of his neighbors with similar problems were in their homes six months before this job was finished.
 

 After weighing the credibility of the witnesses, reviewing the documents submitted by the Defendant detailing the mistakes and/or misrepresentations, and considering the delays involving these items, the trial judge concluded that the ^Defendant was entitled to a refund of the profit and overhead charges. After our review, we find no manifest error in this regard.
 

 Air conditioning duct cleaning
 

 The Plaintiff next argues that the trial judge erred in granting the Defendant’s claims for the cost of cleaning the air conditioning ducts due to the sanding work. It contends that the ducts needed cleaning before the sanding work began since they had not been cleaned in over seventeen years.
 

 The Defendant testified that he had to incur expenses to have his air conditioning ducts cleaned after powder created by the sanding of the concrete floors spread throughout the system and his home. According to the Defendant, the Plaintiff and/or sanding workers neglected to turn off the air conditioner during the process. The powder itself became contaminated with polluted water that had been in the house for several days. The Defendant admitted that he had the ducts “sanitized” for mold before the sanding took place because there had been so much concern about mold after Hurricane Katrina. However, the ducts did not require cleaning at that time.
 

 After our review, we find no manifest error in the trial judge’s award to the Defendant for his air conditioning cleaning costs.
 

 Security alarm pads
 

 The Plaintiff argues that there was no evidence that the Plaintiff lost or disposed of the security system pads.
 

 The Defendant testified that he had to replace his alarm system because the Plaintiffs workers damaged the system. He testified that they mistakenly covered the alarm system with sheetrock during the project, damaged the wiring, and lost the alarm system pads. He said that he never saw the pads after the Plaintiffs workers disposed of the excess sheetrock in the trash.
 

 
 *939
 
 | u>Again, the trial judge weighed the evidence and credibility of the witnesses and found in favor of the Defendant. As the contractor is responsible for any damage that is incurred as a result of the work he supervises, we find no error in the trial judge’s ruling awarding damages to the Defendant for these extra expenses.
 

 Profit and overhead for sanding job
 

 The Plaintiff next argues that the trial judge erred in awarding the Defendant a refund on his profit and overhead that it charged for the sanding job performed by SW Louisiana Permit. Although the company belongs to Treen’s son, the Plaintiff contends that there was no claim or evidence that the Plaintiff owned any part of that company.
 

 Both the Plaintiff and SW Louisiana Permit charged the Defendant separately for overhead and profit, resulting in a 40% expense to the Defendant. Yet, the Plaintiff testified that he never charged more than one 20% allowance for overhead and profit, pursuant to the allowance set by the insurance adjuster. Thus, he violated his own policy by including a separate charge for this in his bill. Furthermore, Treen testified that he could have contracted directly to have the work done without the Defendant incurring an additional 20%, but inexplicably failed to do so.
 

 In addition, the Defendant testified that the sanding was unnecessary because he later found out that the bumps on the floor could only be smoothed manually by using a chisel and hammer, and that no one uses a sander for this type of floor problem. According to the Defendant, the job was also worthless, as the | ndiamond encrusted sander that Treen’s son used did not work and the work had to be abandoned after a short while because the sanding sheets tore.
 
 [3]
 

 The evidence supports a reduction in the profit and overhead charges for the sanding job. Consequently, we find that the trial judge did not commit manifest error in awarding the Defendant a reduction for the excessive charge.
 

 DECREE
 

 Accordingly, the judgment of the trial court is hereby affirmed. The costs of this appeal are to be paid by the Appellant.
 

 AFFIRMED.
 

 [1]
 

 . The trial judge initially awarded the Defendant $9,238.64, but reduced it to $4,312.73 in a subsequent amended judgment since part of the $9,238.64 was included in the reduction of the Plaintiff’s award.
 

 [2]
 

 . We also note that the Defendant complained of the charges within a reasonable time.
 

 [3]
 

 . The exact problem with the floor is unclear.