MOORE, J.
|, Annette Brown appeals a summary judgment dismissing Royce Toney, the sheriff of Ouachita Parish, from her tort suit that alleged wrongful arrest, false imprisonment and malicious prosecution. For the reasons expressed, we affirm.

Factual Background

On January 25, 2010, Ms. Brown was at work at The Oaks Nursing Home in West Monroe when Dep. David Germany of the Ouachita Parish Sheriffs Office (“OPSO”) came in with a warrant for her arrest. The warrant named Annette Brown, 5380 DeSiard # 42, to be arrested for aggravated battery. Ms. Brown roundly protested to Dep. Germany that he had the wrong person; she showed him her driver’s license, which listed her address on Deloach Circle, in the Bernstein Park area and nowhere near DeSiard Street, and insisted she knew nothing about any aggravated battery. Unmoved, Dep. Germany took her into custody and brought her to Oua-chita Correctional Center. There, she again vainly tried to convince booking officers that she had nothing to do with the crime. She was in jail for “several hours” until she gathered $1,255 of her own money to pay a bail bondsman to cover her $10,000 bond.
After her release, she went to the Monroe Police Department (“MPD”), looked at the offense report and saw that she was charged -with battering her boyfriend, Lamar Carroll, outside a lounge on DeSiard Street on September 29, 2009. Of course, Ms. Brown had no boyfriend named Lamar Carroll; also, she distinctly recalled *488 that on that night, she was at E.A. Conway Hospital recovering from surgery. She got a copy of her | ^hospital record and took it to the district attorney’s office. She showed this and her driver’s license to an Assistant DA, Brandon Brown, who promptly dropped all charges.
Ms. Brown made numerous requests to be reimbursed her $1,255, but every city and parish official replied there was nothing they could do about it.

Procedural History

Ms. Brown filed this suit in October 2010 against the City of Monroe and Royce Toney, the sheriff of Ouachita Parish. She demanded general damages for wrongful arrest, false imprisonment and malicious prosecution; she also sought special damages for her $1,255 bail bondsman’s fee and one day’s lost wages.
OPSO alleged various statutory limitations of liability[1] but later filed this motion for summary judgment, asserting that aside from making an initial contact with the victim, Lamar Carroll, on the night of the offense, OPSO had no further involvement in the investigation that led to the issuance of the warrant. In essence, it was MPD, and not OPSO, that gave the wrong name to the issuing magistrate, Judge Robert C. Johnson. In support, OPSO filed several affidavits:
Dep. Everett Holloway stated that he responded to a stabbing at The Library Lounge, 5203 DeSiard St., and talked to the victim, Lamar Carroll, who initially said two unknown black males stabbed him. However, after he was taken to E.A. Conway Hospital for treatment, Carroll told Officer Cerda of LSU Police that his assailant was actually his girlfriend (whose name is not given in the affidavit); Dep. Holloway relayed this fact to MPD officers, and later accompanied them to Carroll’s ¡¡¡house, where Carroll admitted his earlier lie and was given a summons for filing a false report. Dep. Holloway stated that OPSO turned over the battery investigation to MPD once they decided the offense occurred at The Library Lounge, inside city limits, and he never supplied any information in support of Ms. Brown’s arrest warrant.
Dep. Jay Russell, chief criminal deputy, also responded to the stabbing, but as it was determined to have occurred inside city limits, the case was turned over to MPD. No OPSO deputies were involved in the investigation leading to Ms. Brown’s arrest warrant, and MPD provided “misinformation” leading to her arrest. Dep. Russell admitted that an OPSO deputy actually executed the arrest warrant signed by Judge Johnson.
Dep. Lia Fontana, a criminal records clerk, stated that Judge Johnson signed an arrest warrant for “Annette Brown” on November 9; Dep. Fontana received the warrant on November 12 and inputted the info on December 3; she forwarded a copy to a warrants deputy by December 9, and she had no reason to suspect it was invalid.
Dep. Linda Lively, the warrants deputy, stated that she received a copy of the warrant in early December and assigned it to Dep. Germany. She did not apply for the warrant and had no reason to suspect it was invalid.
Dep. David Germany stated that in early December, Dep. Lively assigned him to execute the warrant; he did so on January 25, 2010, in West Monroe. Like the other affiants, he stated he did not apply for the warrant and had no reason to suspect it was invalid.
*489 OPSO argued that as a matter of law, it acted pursuant to a facially valid warrant and thus cannot be liable for wrongful arrest or false imprisonment. Conques v. Fuselier, 327 So.2d 180 (La.App. 3 Cir.1976); Kabir v. City of Lafayette, 509 So.2d 464 (La.App. 3 Cir.1987). Also, Ms. Brown could not prove malice, an essential element of malicious prosecution. Craig v. Carter, 30,625 (La.App. 2 Cir. 9/23/98), 718 So.2d 1068, writ denied, 98-2698 (La.12/18/98), 734 So.2d 636; Touchton v. Kroger Co., 512 So.2d 520 (La.App. 3 Cir.1987).
Ms. Brown opposed the motion, arguing that the real culprit who stabbed Carroll was named Annette Bryant, and that someone — likely in OPSO — mistakenly grabbed Annette Brown’s DMV record and entered it into the system, resulting in the affidavit and arrest warrant.[2] Most of the information in the affidavit and warrant (name, date of birth, vital statistics) was correct as to Ms. Brown; the only wrong entry was the DeSiard Street address, which actually belonged to Ms. Bryant. She also argued that regardless of who misidentified her, the whole thing could have been averted had the arresting or booking deputies taken “prompt action” to discover the error. In support, she offered three affidavits and the MPD offense report:
Annette Brown stated the facts outlined above and showed that the bill of information and request for arrest warrant both named “Annette Brown.” At the time of her arrest, she showed the deputy her driver’s license, proving that she did not live at the address listed in the warrant, but the deputy was not interested. She added, “The [OPSO] got a lot of detailed information about me from somewhere.”
Officer James Cerda, the LSU Police officer, was in the emergency room of E.A. Conway when Carroll arrived; Carroll initially said that two black men stabbed him near The Library Lounge, but later said it was his girlfriend, who lived in Colonial Manor Apartments on DeSiard Street, near The Library Lounge. Officer Cerda called OPSO with this information.
Vicki Smith, manager of Colonial Manor Apartments, 5330 DeSiard Street, stated that Annette Bryant lived there in unit # 41 (not # 42) from 2008-2010, and her electric meter was | r,registered to Carroll. Further, Annette Brown never was a tenant at Colonial Manor, and nobody from OPSO ever contacted her about the stabbing.
The MPD offense report, by Cpl. Darren Canales, stated that he responded to the stabbing but turned the case over to OPSO because he thought the offense occurred outside the city limits. Early the next morning, he was dispatched to E.A. Conway because Carroll had changed his story; on arrival, he was told by Officer Cerda that the suspect was actually Carroll’s girlfriend, Annette Brown, who lived at 5330 DeS-iard Street.[3] Cpl. Canales tried to find her there, but without success. An attached “narrative print” stated that on *490 October 2, 2009, MPD Officer David Dowdy tried to contact both the victim, Carroll, and the suspect, “Annette (Hubbard) Brown,” but was unsuccessful.
Ms. Brown argued that the arresting and booking deputies’ failure to see that she was the wrong person destroyed their probable cause to arrest. Zerbe v. Town of Carencro, 2004-422 (La.App. 3 Cir.10/6/04), 884 So.2d 1224, writs denied, 2004-2719, 2004-2735 (La.1/14/05), 889 So.2d 270, 271.
The district court ordered all pretrial discovery to be completed by August 10, 2011, and later fixed the hearing on OPSO’s motion for summary judgment for September 29, 2011.

Action of the District Court

After the hearing, the court ruled from the bench that there was no evidence to connect OPSO to this warrant. “There’s nothing that shows that the sheriff participated in anything other than going to arrest this person after the warrant was issued. How the DA arrived at that, there’s nothing here to tell me that the sheriff is the one that did it. * * * You can’t just have a suspicion of what might have happened.” The court therefore granted | (jOPSO’s summary judgment.
Ms. Brown filed a motion for new trial, vigorously disputing OPSO’s assertion that it “was in no way involved in the investigation into Annette Bryant/Annette Brown nor did [OPSO] provide information that is contained in the warrant of arrest[.]” She also filed a notice of deposition for Nick Anderson, the Assistant DA who allegedly worked on the arrest warrant.
Anderson filed a motion to quash, urging the notice was untimely under URDC 9.15 and sought information protected by attorney-client privilege contrary to La. C.E. art. 508.
After a hearing on December 7, the court denied the new trial and sustained the motion to quash. Ms. Brown has appealed, raising three assignments of error. The City of Monroe is not a party to the appeal and has not filed a brief.

General Principles

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315 A. Louisiana uses the duty-risk analysis to determine whether to impose liability under Art. 2315. Lemann v. Essen Lane Daiquiris Inc., 2005-1095 (La.3/10/06), 923 So.2d 627. The analysis comprises five elements,[4] and the one critical to this case is whether the defendant’s substandard conduct was a cause in |7fact of the plaintiffs injuries. When the conduct of multiple parties may have contributed to cause the plaintiffs harm, the plaintiffs burden is to prove that the harm “would not have occurred absent the specific defendant’s conduct.” Bonin v. Ferrellgas Inc., 2003-3024 (La.7/2/04), 877 So.2d 89, and citations therein; Allums v. Parish of Lincoln, 44,304 (La.App. 2 Cir.6/10/09), 15 So.3d 1117, writ denied, 2009-1938 (La.11/20/09), 25 So.3d 803.
The district court has broad discretion in regulating pretrial discovery, and its decision will not be disturbed on appeal absent a clear abuse of that discre *491 tion. LaBorde v. Shelter Mutual Ins. Co., 2012-0074 (La.3/9/12), 82 So.3d 1237; Bell v. Treasure Chest Casino, 2006-1538 (La.2/22/07), 950 So.2d 654; Bishop v. Shaw, 43,137 (La.App. 2 Cir. 3/12/08), 978 So.2d 568. That discretion may be abused when the trial court denies a motion to compel seeking information that is properly discoverable, especially when such an examination may be the only means by which a party can defend the claims against it. Bishop v. Shaw, .supra. A request for issuance of a subpoena shall be filed with the clerk of court at least 10 days before the desired appearance date, unless a different deadline is set by the court in the pretrial or other order. URDC 9.15(a).
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880; Adams v. JPD Energy Inc., 45,420 (La.App. 2 Cir. 8/11/10), 46 So.3d 751, unit denied, 2010-2052 (La.11/12/10), 49 So.3d 892. Summary judgment procedure is designed to | Rsecure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Sensebe v. Canal Indem. Co., 2010-0703 (La.1/28/11), 58 So.3d 441. After adequate discovery or after a case is set for trial, “a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” La. C.C.P. art. 966 C(l). When the motion for summary judgment is made and supported as provided in Art. 966, the adverse party “may not rest on the mere allegations or denials of his pleading,” but his response, by affidavits or other proper summary judgment evidence, “must set forth specific facts showing that there is a genuine issue for trial.” La. C.C.P. art. 967 B; Cheramie Servs. Inc. v. Shell Deepwater Prod. Inc., 2009-1633 (La.4/23/10), 35 So.3d 1053. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. Id. Speculation that a fact-finder might disbelieve the mover’s witnesses will not defeat a properly supported motion for summary judgment. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002; Babin v. Winn-Dixie La. Inc., 2000-0078 (La.6/30/00), 764 So.2d 37. Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Sensebe v. Canal Indem. Co., supra; Tillman v. Eldridge, 44,460 (La.App. 2 Cir. 7/15/09), 17 So.3d 69.

Discussion

By her first two assignments of error, Ms. Brown urges the district 19court erred in granting OPSO’s motion for summary judgment. She argues there was sufficient information to support the conclusions that (1) OPSO participated in the investigation which resulted in incorrectly identifying her as the perpetrator and (2) the person who supplied the incorrect birth date to the district attorney’s office was an employee of OPSO who obtained her birth date by accessing OPSO’s criminal records database. She shows that any law enforcement agency arresting a person has a duty to exercise reasonable care to make sure the arrest does not involve mistaken identity. Hayes v. Kelly, 625 So.2d 628 (La.App. 3 Cir.1993), writs denied, 633 So.2d 171, 580 (1994). She argues that from the summary judgment evidence, the only way her birth date could have appeared on the warrant was that it came from OPSO’s database, where she had previously been entered as a crime victim, and “there is no evidence to support the con- *492 elusion that anyone other than [an OPSO] employee had access to this database.” She also urges that if both MPD and OPSO had control of the database, res ipsa loquitur demands that both be kept in the suit to determine the exact mechanism by which the injury occurred. National Union Fire Ins. Co. v. Harrington, 02-882 (La.App. 8 Cir, 4/17/03), 854 So.2d 880.
The summary judgment evidence includes the affidavits of two OPSO deputies (Holloway and Russell) who responded to the crime but turned the case over to MPD the next morning when they learned the offense occurred inside the city limits. Both said they supplied no information in support of the arrest warrant. The MPD offense report shows that although both MPD and OPSO officers responded to the crime, OPSO initially took the case; the 110next morning, it was transferred to MPD. The report also shows that MPD officers attempted to reach “Annette (Hubbard) Brown” at her DeSiard Street apartment on October 2, but she was not there. The arrest warrant was not signed until November 9; three deputies (Fontana, Lively and Germany) stated that they handled the warrant only after the judge signed it, and played no role in applying for it. None of this shows that any OPSO personnel supplied misidentification in support of the arrest warrant. In short, OPSO properly supported its motion for summary judgment, thus shifting the burden of production to Ms. Brown. La. C.C.P. art. 967 B.
Ms. Brown’s own affidavit asserts that OPSO “got a lot of detailed information about me from somewhere,” but as she had no firsthand knowledge of the activities of OPSO officers, this is mere speculation.[5] While this hypothesis is at least plausible, the burden was on Ms. Brown to set forth specific facts showing a genuine issue for trial. On close examination we find no specific facts to show that OPSO officers provided incorrect information in support of the warrant. Without such specific facts, summary judgment in favor of OPSO was proper.
Ms. Brown also argues that regardless of which party, OPSO or MPD, supplied the erroneous information for the warrant, OPSO could have averted the wrongful arrest or mitigated her harm had Dep. Germany or the booking officers checked the discrepancy in the address when it was pointed out to them. In Hayes v. Kelly, supra, the court affirmed a finding of false Inimprisonment against a sheriff who kept the plaintiff in jail for nearly six months without investigating his claims of “discrepancy in the nicknames and the addresses, and protestations of mistaken identity.” However, such a prolonged refusal to investigate is not present in this case. On the contrary, if a person is arrested pursuant to a valid warrant, there is no false arrest or false imprisonment. Rodriguez v. Deen, 33,308 (La.App. 2 Cir. 5/10/00), 759 So.2d 1032, writ denied, 2000-1414 (La.6/23/00), 765 So.2d 1049; Hays v. Hansen, 96-1903 (La.App. 3 Cir. 3/19/97), 692 So.2d 3. There is no showing that this warrant was facially invalid. There is also no showing that OPSO acted without probable cause, an essential element of malicious prosecution. Kennedy v. Sheriff of East Baton Rouge, 2005-1418 (La.7/10/06), 935 So.2d 669. These assignments of error lack merit.
*493 By her third assignment of error, Ms. Brown urges the court erred in denying her the opportunity to conduct additional discovery and in denying the motion for new trial without allowing her to depose Mr. Anderson, the Assistant DA who could have pinpointed the source of the inaccurate birth date. She argues that the information sought was not privileged under La. C.E. art. 508, as she intended to ask Mr. Anderson nothing about his client, the DA’s Office, but about the actions of OPSO and MPD employees. She also argues that URDC 9.15 did not apply because the scheduling order was for a trial that had already been continued.
We perceive no abuse of the district court’s broad discretion to regulate pretrial discovery. Notably, the request to depose Mr. Anderson came over one year after suit was filed, nearly three months after the | ^discovery deadline fixed by the court, and without any showing that facts or circumstances prevented counsel from identifying and deposing Mr. Anderson in a timely manner. On this record, the court did not abuse its discretion in quashing the notice of deposition. LaBorde v. Shelter Mutual Ins. Co., supra; Bell v. Treasure Chest Casino, supra; Bishop v. Shaw, supra. This assignment of error lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the appellant, Annette Brown.
AFFIRMED.

. These included La. R.S. 13:5106, 13:5112 and 9:2798.1.

. She also argued, “MPD representatives have averred that MPD did not access the DMV records and, if the matter was handled in the usual and customary fashion, this information would have been obtained by [OPSO] acting in cooperation with the district attorney’s office.” In support, she cited Plaintiff’s Exhibit “E,” but the record contains no such exhibit; the exhibits skip straight from "D” to "F.”

. This fact raises the possibility that Cpl. Ca-nales misunderstood Officer Cerda, or that Officer Cerda misunderstood Carroll, with the result that Cpl. Canales transcribed "Annette Bryant” as "Annette Brown.”

. "(1) the defendant had a duty to conform his conduct to the appropriate standard (the duty element); (2) the defendant's substandard conduct failed to conform to the appropriate standard (the breach element); (3) the defendant’s substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damage element).” Lemann v. Essen Lane Daiquiris, at p. 7, 923 So.2d at 633, and citations therein.

. As noted in fn. 2, Ms. Brown argued to the district court that MPD personnel stated they did not access DMV records and that the "usual and customary” procedure was for OPSO to forward such information to the DA's office; however, the support for this argument, Exhibit "E,” is not attached to her opposition.