974 So.2d 838 (2008)
ENTERGY LOUISIANA, INC., Plaintiff-Appellee,
v.
Paul R. JAMES, d/b/a Tupaw Manor Apartments, Defendant-Appellant.
No. 42,826-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 2008.
*839 Hallack Law Firm by William H. Hallack, Jr., West Monroe, for Appellant.
Breithaupt, Dunn, Dubos, Shafto & Wolleson, LLC by Michael L. Dubos, Monroe, for Appellee.
Cyd Sheree Page, Lafayette, for West Tree Service, Third Party Defendant-in-Reconvention/Appellee.
Before WILLIAMS, GASKINS & PEATROSS, JJ.
PEATROSS, J.
In this action for damages against Entergy Louisiana, Inc. ("Entergy") for alleged wrongful trimming of vegetation around a distribution line, Plaintiff-in-Reconvention, Paul R. James, d/b/a Tupaw Manor Apartments, appeals a judgment in favor of Entergy and dismissing his claim. For the reasons stated herein, we affirm.

FACTS and PROCEDURAL BACKGROUND
In 1991, Highway 143 (Whites Ferry Road) which is located next to Tupaw Manor Apartments in West Monroe, Louisiana, was widened. Entergy's distribution lines ran along Alexander Road and Highway 143 and, with the widening of the highway, several poles were relocated. Three poles were placed so that the lines crossed the highway diagonally to the southeast corner of the apartment complex. In 1994, Mr. James purchased Tupaw Manor Apartments, bearing municipal address of 111 Alexander Road. The distribution lines at issue are contained within what Mr. James characterizes as a "green zone" that buffers the apartment complex from the highway traffic adding to the aesthetic value of the complex.
In 2004, Entergy renewed its contract with West Tree Service ("West") to trim vegetation encroaching on electrical distribution lines. West was to perform this work in compliance with Entergy's "Distribution Vegetation Management Line Clearance Specifications" ("Clearance Specifications") on file with the Louisiana Public. Service Commission. During August 2004, Superior Forestry, Inc., sprayed the area with herbicide. During September 2004, and specifically on September 27, 2004, West cleared vegetation that had been sprayed and performed additional trimming on Mr. James' property as per Entergy's contract. Mr. James objected; however, during the last few months of 2004, at Entergy's direction, West crews made several additional attempts to trim vegetation on the property of Mr. James. On September 28, 2004, Mr. James executed Entergy's Tree Trimming Refusal form. Also during this time, Entergy sent two certified letters to Mr. James attempting to secure his consent to allow it to perform the necessary trimming of the overgrown vegetation around the lines in order for Entergy to provide safe and continuous electricity to the area. Unable to obtain consent from Mr. James, Entergy filed a petition in January 2005 asserting that it had an agreement with the city of West Monroe to operate electric facilities within the city and had a right-of-way easement onto Mr. James' property for maintenance purposes. Ultimately, the trimming was completed in January 2005.
Mr. James filed an answer and reconventional demand in February 2005 seeking damages in excess of $410,000. He *840 claimed that Entergy engaged in the clear-cutting of trees, harvesting and removing over 200 trees. He claimed that Entergy cut trees far in excess of the allowed or agreed upon width of trimming. Mr. James sought property damage to fencing, a dumpster pad and lost rentals from apartments, along with physical pain and mental anguish as a result of an alleged encounter between himself and West's workers. Mr. James further argued that Entergy's intentional and egregious acts were in bad faith, thereby entitling him to treble damages and attorney fees. Entergy filed a third party demand against its contractor, West, with which it had contracted to do the actual trimming work.
Significantly, later in February 2005 and prior to trial, the parties entered into a stipulated Declaratory Judgment and Preliminary Injunction in which they agreed that:
* * *
B. Entergy has the right to maintain all of its electric distribution lines and poles by trimming any encroaching trees, limbs, shrubs and other vegetation within ten feet (10') of Entergy's lines in accordance with modern arboretum standards and as specifically outlined in Entergy's Distribution Vegetation Management Line Clearance Specifications attached hereto as Exhibit "A.
C. Pursuant to the St. Julien Doctrine,[1] so long as Entergy and/or its contractors comply with the vegetation maintenance standards stated on Exhibit "A", Paul R. James, d/b/a Tupaw Manor Apartments, ("Defendant") has no legal right to prohibit or interfere with Entergy's reasonable and necessary trimming of encroaching trees, limbs, shrubs and other vegetation along its distribution lines and utility poles located throughout Ouachita parish, Louisiana, including but not limited to Alexander Road and Louisiana Highway 143 (White's Ferry Road).
The Clearance Specifications provide in paragraph 1.0.2 that "all trees at a minimum shall be trimmed back to the previous trim point (amount of clearance obtained during the last trim) or as per table below, whichever is greater." The table Provides that slow growth trees in rural settings be trimmed to 10 feet and fast growth trees in rural settings be trimmed to 15 feet. Paragraph 1.0.5 provides that an exception to paragraph 1.0.2 will be made where "there is a customer refusal where procedures outlined in the [Clearance Specifications] have been followed" . . . "such execption[], however, shall not *841 result in unsafe conditions or jeopardize reliability."
According to Mr. James, Entergy could only (A) trim to an indefinite width under the St. Julien Doctrine of La. R.S. 19:14, see footnote 1, supra, depending on the extent to which it had actually claimed and used a right-of-way in the past or (B) ten feet under the Clearance Specifications. Mr. James alleged, inter alia, that Entergy exceeded this allowable width of trimming around the distribution line, thereby causing damage to the aesthetic value, of the "green zone" around the apartment complex. As previously stated, Mr. James filled out a Tree Cutting Refusal Form expressing his objection to having any trees removed, which he contends requires Entergy to then seek a court order to continue trimming. Entergy's letter to Mr. James was written in accordance with paragraph 1.0.5 of the Clearance Specifications noting that the trimming was necessary to ensure safe, reliable electrical service to the area, including the apartment complex.
At trial, Entergy called three witnesses, Don Adcock, Don Newell and Paul LeMoine. Each witness agreed that the trimming exceeded 15 feet, but provided detailed testimony regarding the existence of a prior trim point. Arthur Summit, foreman for West, also testified that all trimming was done inside the prior trim point. In addition, Dr. John Adams, who testified as an expert for Entergy, determined that there was a prior trim line and that all cutting was done within that prior trim point. Dr. Adams further testified that the physical evidence he observed during his inspection of the property supported the existence of the prior trim point, including the numerous resprouts and the break line between the small trees and larger trees. Casey Keeling, the West employee who actually performed much of the trimming on the James property, testified that most of the vegetation removed was resprouting tangled with vines.
Mr. James provided testimony that there were log trucks being loaded with cut trees coming and going from the property. This testimony was contradicted by West employees. Mr. James also testified that, on one particular date, a West trimming crew was on site attempting to trim trees on his property. Mr. James stated that a West worker began to cut a branch with a chainsaw directly above his head causing debris to fall on him. The record indicates that Mr. James stood under the work being performed and had some falling sawdust land on him, at which time he alluded to a potential personal injury claim against the workers. Mr. James also alleged that a worker drove a truck within an inch of him, almost striking him,
After hearing the evidence and in its reasons for judgment, the trial court framed the issue as whether Entergy had complied with its Clearance Specifications in performing the trimming. The court found that Mr. James failed to carry his burden of proof and was, therefore, entitled to no damages. This appeal ensued.

DISCUSSION
On appeal, Mr. James asserts 11 assignments of error, framing the issues as follows (verbatim):
1. Did the Trial Court err in dismissing Paul R. James' cause of action under the St. Julien Statute?
2. Did the Trial Court err in failing to hold that the burden of proof of the required facts for the existence and extent of servitude under LSA R.S. 19:14 (St. Julien Statute) was on Entergy Louisiana, Inc.?
3. Did the Trial Court err in dismissing Paul R. James' cause of action under the Distribution Vegetation *842 Management Line Clearance Specifications?
4. Did the Trial Court err in its determination that there was a prior trim point established by or on behalf of Entergy Louisiana, Inc.?
5. Did the Trial Court err in dismissing Paul R. James' cause of action under LSA-R.S. 3:4278.1 (Tree Piracy)?
6. Did the Trial court Err in dismissing Paul R. James' cause of action under General Tort Principles?
7. Did the Trial court err in dismissing Paul R. James' cause of action for assault/battery under General Tort Principles?
8. Did the Trial Court err in dismissing Paul R. James' cause of action for trespass under General Tort Principles?
9. Did the Trial Court err in sustaining the objection that resulted in the refusal to admit into evidence photographs of the vegetation maintenance practices of Entergy Louisiana, Inc., along its distribution line as evidence of Entergy Louisiana, Inc.'s habit or practice of compliance with the Distribution Vegetation Management Line Clearance Specifications?
10. Did the Trial Court err in sustaining the objection that resulted in the refusal to admit into evidence John May's testimony in confirmation of the correctness of Paul James' calculation of damages resulting from diminution in value of his apartment complex?
11. Did the Trial Court err in failing to apply the adverse presumption rule for the non-testifying witnesses that Entergy Louisiana, Inc., could have called?
The first four issues/assignments of error essentially involve a central query of whether Entergy had the right to trim vegetation around the distribution lines on the property of Mr. James and, if so, to what width around the lines was Entergy allowed to trim. We will address the remaining issues in turn.

Vegetation Trimming
On the specific facts of this case, we conclude that the stipulated declaratory judgment signed by the parties prior to trial controls the allowable trimming width of the vegetation around the distribution lines on the property at issue owned by Mr. James. Recall that, in this stipulated declaratory judgment, the parties agreed that the trimming width would be 10 feet from the poles or according to Entergy's Clearance Specifications. The Clearance Specifications, as previously stated, provide widths of 10 feet for slow growing foliage, 15 feet for fast growing foliage or trimming, to a prior trim point, whichever is greater. Mr. James signed this judgment and no appeal was taken therefrom.
In light of this stipulated judgment, we find that the trial court correctly found the issue to be whether or not Entergy complied with its Clearance Specifications. This is a factual determination. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Bright Morning Star Missionary Baptist Church v. Brown, 38,333 (La.App.2d Cir.5/28/04), 877 So.2d 1003, writ not considered, 04-2136 (La.11/15/04), 887 So.2d 466. We detect no abuse of discretion here. As previously mentioned, Entergy produced several qualified witnesses, thoroughly outlined by the trial judge in his reasons for judgment, *843 who found strong evidence of resprouts and prior trim points. Dr. Adams testified that there was a previous trim point and that all of the cutting was done within that trim point. The trial court's factual conclusions regarding specific tree removal and stump versus resprouting removal are all well supported by the testimony and we find no abuse of discretion in those conclusions.
In summary, we note that the Clearance Specifications may, in certain circumstances, lead to unauthorized, increased and unchecked trimming on private property; however, under the specific facts of this case, Mr. James is bound by the "stipulated declaratory judgment and we find no clear error in the trial court's factual determination that Entergy's trimming fell within the guidelines set forth therein.
In light of our conclusion, we pretermit any further discussion of the St. Julien doctrine or separate cause of action under the tree piracy statute, La. R.S. 3:4278.1, as urged in issue/assignment of error number five.

Assault/Battery or General Tort Liability
Regarding Mr. James' allegations of damages resulting from alleged encounters with West employees, argued in issues/assignments of error numbers six and seven, we note that the trial judge was in the best position to hear and weigh the testimony of the witnesses regarding those alleged incidents. Stobart v. State, Dept. of Transp. and Dev., 617 So.2d 880 (La.1993). We cannot say that the trial court abused its discretion in finding that Mr. James failed to carry his burden of proof that he was injured physically or suffered mental anguish from such alleged incidents. We will not disturb these findings on appeal. Likewise, we find no error in the trial court's failure to award damages for trespass.
Furthermore, in light of our holding herein, we pretermit any discussion of issue/assignment of error number nine concerning the trial' court's refusal to admit certain photographs into evidence. Likewise, the propriety of the calculation of damages argued in issue number ten is moot under our ruling herein.
Finally, Mr. James' argument in issue/assignment of error number eleven regarding application of the adverse presumption for non-testifying witnesses on behalf of Entergy is abandoned for failure to brief. URCA 2-12.4.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Entergy Louisiana, Inc. is affirmed at the cost of Paul R. James, d/b/a Tupaw Manor Apartments.
AFFIRMED.
GASKINS, J., concurs with written reasons.
GASKINS, J., concurring.
I respectfully concur with the majority's opinion.
In this case, Mr. James stipulated that Entergy was entitled to trim up to the prior trim point. Mr. James' position was that the most current trimming was in excess of the prior trim point. Evidence was presented by Entergy that this contested area had previously been trimmed. The trial court found the testimony to be credible, and found in favor of Entergy.
The opinion hints, but does not flatly state, that Entergy does not have a right to trim to the prior trim point, when it is in excess of the 10-15 foot guidelines, and the landowner protests. Certainly, special circumstances could arise that might allow trimming beyond the 10-15 foot guidelines, over the landowner protestations. However, *844 just because Entergy, on a prior occasion, trimmed beyond this 10-15 foot point, does not give Entergy the unfettered right to always trim in excess of these guidelines.
NOTES
[1] The St. Julien doctrine is derived from La. R.S. 19:14, which provides, in pertinent part, as follows:

§ 14. Possession of property; removal of facilities; objection; waiver
A. In any case where the state or its political corporation or subdivision has actually, in good faith believing it had authority to do so, taken possession of privately owned immovable property of another, and constructed facilities upon, under, or over such property with the consent or acquiescence of the owner of the property, such owner shall be deemed to have waived his right to contest the necessity for the taking and to receive just compensation prior to the taking, but he shall be entitled to bring an action for such compensation, to be determined in accordance with the provisions of R.S. 19:9, for the taking of his property or interest therein, the just compensation to be determined as of the time of the taking of the property, or right or interest therein, and such action shall proceed as if the state, its political corporation, or subdivision had filed a petition for expropriation as provided for in R.S. 19:2.1.