DREW, J.
| í Johnny Johnson (Johnson) and Dolores Wallace Johnson, plaintiffs, on October 31, 2006, leased commercial property at 3224 Louisville Avenue, Monroe, for use as a Mexican restaurant, to the defendants, Pueblo Viejo, Inc., Stephen Tabe, and Mario Andrade. This dispute over unpaid rents, reimbursements for repairs and insurance premiums along with other damages has a convoluted procedural history. Before reaching the merits, this court must decide whether defendants’ appeal is properly before the court. For the reasons set out below, we find that this appeal is appropriate for adjudication by this court. The judgment of the trial court is affirmed at defendants’ costs.
PROCEDURAL BACKGROUND
January 24, 2012 Written Reasons for Judgment
January 24, 2012 Judgment, Reserving Quantum of Attorney Fees
January 30, 2012 Amended Judgment Adding Interpreter’s Fee[1]
January 31, 2012 Plaintiffs’ Motion to Set Attorney Fees
February 13, 2012 Judgment Setting Attorney Fees of $22,138.50 and Costs of $5,282.70
February 17,2012 Defendants’ Motion for Suspensive Appeal
February 23, 2012 Order Granting Suspensive Appeal with $30,000.00 Appeal Bond
February 23,2012 Defendants’ Motion for New Hearing on Attorney Fees[2]
March 6, 2012 Plaintiffs’ Motion to Increase Suspensive Appeal Bond
April 13, 2012 Hearing on Attorney Fees and Suspensive Appeal Bond
*596 April 23, 2012 Judgment setting Attorney Fees in the same amount awarded in the February 13, 2012, Judgment
12April 23, 2012 Order Increasing the Amount of the Suspensive Appeal Bond to $110,000
April 24, 2012 Notice of the Judgment Mailed to the Parties
May 31, 2012 Appeal Lodged in Appellate Court
On June 14, 2012, Judges Stewart, Gas-kins and Lolley issued a rule to show cause why the February 17, 2012, appeal should not be dismissed for lack of jurisdiction based upon a premature appeal from an unappealable partial judgment dated January 24, 2012. In the interim, the trial court had disposed of the matters left pending by the January 24, 2012, judgment. Defendants’ motion for new hearing on one issue was filed on February 23, 2012, and resolved in a judgment dated April 23, 2012. On August 28, 2012, Judges Stewart, Gaskins and Lolley referred the issues raised in this court’s June 14, 2012, rule to show cause to the merits of the appeal.
La. C.C.P. art. 2088(B) states:
B. In the case of a suspensive appeal, when the appeal bond is not timely filed and the suspensive appeal is thereby not perfected, the trial court maintains jurisdiction to convert the suspensive appeal to a devolutive appeal, except in an eviction case.
In Overmier v. Traylor, 475 So.2d 1094 (La.1985), the Louisiana Supreme Court noted that appeals are favored and that the Code of Civil Procedure is to be “construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves.” La. C.C.P. 5051. The Overmier decision ruled that an appeal granted before.the signing of a final judgment is subject to dismissal until the final judgment has been signed. Once the final judgment is signed, any previous defect of prematurity is cured and no useful purpose is served in dismissing an otherwise valid appeal. Overmier, supra.
IsGuided by Overmier, supra, the First Circuit in Chauvin v. Chauvin, 2010-1055 (La.App. 1st Cir.10/29/10), 49 So.3d 565, observed that Mr. Chauvin’s appeal was premature because he filed the appeal pri- or to the signing of the final judgment. However, the prematurity defect was cured once the final judgment was signed. Additionally, after his motion for appeal was granted, Mr. Chauvin filed a Motion for a New Trial. Since his appeal was pending, the trial court concluded it did not have jurisdiction to consider a new trial motion which was continued without date. Under La. C.C.P. art.2088, the First Circuit decided that Mr. Chauviris new trial motion was waived or abandoned when the order of appeal was signed, so that Mr. Chauvin’s appeal properly before the appellate court, notwithstanding his pending new trial motion.
In this matter, following the signing of the defendants’ order of appeal, defendants sought and received a new hearing on the quantum of attorney fees. Based on Chauvin, that new hearing on attorney fees was without effect, since the trial court was divested of jurisdiction when it signed the order of appeal. La. C.C.P.2088. These defendants waived or abandoned their right to seek a new hearing when they obtained the order for this appeal. A judgment on any matter reviewable on appeal and entered by a trial court after jurisdiction is divested is an absolute nullity. Tealwood Properties, LLC v. Succession of Graves, 47,446 (La.App.2d Cir.9/20/12), 105 So.3d 120.
*597 All matters before the trial court were resolved while the appeal was pending. Following the granting of the order of appeal, any prematurity |4issues were cured by subsequent judgments resolving all the issues pending in the trial court.
Even when an appeal is not a proper suspensive appeal, appeals are treated as devolutive. La. C.C.P. art. 2088(B). The record contains an order dated June 15, 2012, converting this matter from a sus-pensive to a devolutive appeal. This appeal is properly before this court for resolution.
REASONS FOR JUDGMENT
The trial court set out the facts in written reasons for judgment dated January 24, 2012. The lease ran from October 15, 2006, until January 31, 2012, with rent payments of $4,400 due on the first day of the month. Plaintiffs provided defendants with free occupancy from October 15, 2006, through February 2007. Defendants paid rent from March 1, 2007, until September 2010. The lease contained detailed repair and maintenance requirements on lessors and lessees along with assorted mandates for various types of insurance. Tabe (who denied signing) and Andrade (who admitted signing) executed a separate “In Solido Obligation and Guaranty Agreement” consenting to be personally responsible to fulfill the lease terms.
The Johnsons sued to recover unpaid rents, reimbursements for certain repairs, and insurance coverage the defendants failed to maintain. Additionally, they sought damages for defendants’ alleged breach of the lease terms. The Johnsons sought back rent for 16 months totaling $70,400.00, which was granted by the trial court.
To the defense assertion that the parties entered a verbal agreement | ¿requiring plaintiffs to make all the repairs needed to make the property suitable for use as a restaurant, the trial court found that the only circumstances under which the trial court could consider extrinsic evidence was if the lease itself was ambiguous. The trial court found this contract was clear and did not lead to absurd consequences. The lease of the premises was “as is” with all repairs[3] to be made by the lessees.
Concerning the repairs, Johnson testified that plaintiffs made certain repairs after being told by Andrade (who managed the restaurant) that plaintiffs would be reimbursed. Although Tabe denied code-fendant Andrade was allowed to authorize repairs, the trial court noted that the concept of apparent authority is operable when it is reasonable for a third person to believe, and does in fact believe, that the agent is authorized. Johnson relied on the belief that Andrade had authority to act on behalf of Pueblo Viejo, Inc. Tabe testified that Andrade was the primary contact with plaintiffs in negotiating the lease and was in charge of day-to-day operations at the restaurant, including hiring employees, ordering food, and paying rent. The trial court found plaintiffs were reasonable in relying on the apparent authority of An-drade to authorize repairs. The judgment awarded plaintiffs $31,582.91 in repairs.
Under the lease terms, the defendants were required to maintain certain insurance coverage about which uncontradicted evidence showed lapsed coverages totaling $3,007.25, which the defendants were ordered to | (¡pay to the Johnsons.
*598 Testimony established that all the John-sons’ leases required personal guaranties for the performance of the leases. While Andrade admitted his signature, Tabe disputed his. Andrade stated he recognized Tabe’s signature, and handwriting expert Robert Foley positively identified Tabe’s signature on the guarantee. Both Tabe and Andrade were found personally liable for the lease performance.
Finally, the trial court concluded that the defendants were responsible for attorney fees and court costs under the lease. At plaintiffs’ request, the attorney fee issue was left open for the amount to be set subsequently. The January 24, 2012, judgment awarded plaintiffs a total of $104,990.16 for rent, insurance premiums, and repairs with the attorney fees quantum to be set later. Defendants were cast with court costs, also. In an amended judgment dated January 30, 2012, the trial court set an interpreter’s fee of $1,225.[4] On February 13, 2012, the trial court signed the judgment awarding to plaintiffs attorney fees of $22,138.50 and setting court costs at $5,282.70.
The defendants’ appeal was granted in an order signed February 23, 2012. The plaintiffs answered the appeal seeking attorney fees for the appeal.
DISCUSSION
Testimony was that Andrade and Tabe were partners in the corporation with An-drade providing the restaurant experience and day-tojday7 management with Tabe providing financing. The pair had three other Pueblo Viejo Mexican restaurants in the area and wanted to open a fourth location.

Standard of Appellate Review

In Quillian v. Dixie Bonded Warehouse, 47,330 (La.App.2d Cir.8/29/12), 105 So.3d 71, writ denied, 2012-2289 (La.11/30/12), 103 So.3d 376, this court cited Stobart v. State, 617 So.2d 880 (La.1993), and set out the standard of appellate review for factual determinations.
A trial court’s findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. To reverse a fact finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently.
Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Further, when findings are based on determinations regarding credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in that which is said.
Quillian, swpra, at p. 76. Citations omitted.

Trial Court’s Denial of Brian Smith’s Motion to Withdraw as Andrade’s Attorney

Asserting trial court error, the defendants argued that defense counsel, Brian G. Smith, should have been permitted to withdraw as legal representative of defendant Andrade due to a “possible” conflict between Andrade and codefendant Tabe. According to the defendants, Smith *599 18“erroneously included” Andrade in the defendants’ initial answer. Subsequently, Smith filed a motion for leave and the amended answer seeking to strike An-drade’s name “submitted in error” by Smith.
The plaintiffs correctly countered that Smith never complied with the legal directives for withdrawing as counsel for Andrade. Initially on August 22, 2011, Smith attempted to file an amended answer without leave of court striking An-drade’s name from the answer. On September 13, 2011, with a motion to amend with leave of court, Smith again sought to strike Andrade’s name from the answer, instead of complying with La. District Court Rule 9.1S.[5]
IsAfter trial was set for November 8, 2011, Smith filed on October 19, 2011, a *600 motion to withdraw,[6] alleging a conflict among Andrade, Tabe, and Pueblo Viejo, Inc., regarding unspecified “missing funds” and “unauthorized acts.” Smith also stated that Andrade was an adverse party to Tabe, had retained separate counsel, and Smith could not represent Andrade in this dispute due to the conflict. Smith alleged that he notified Andrade at his last known address and attached a scheduling order and judgment including the trial date of November 9, 2011.
|inOn October 19, 2011, the trial court set a hearing on October 26 for Smith to show cause why he should not be permitted to withdraw as attorney of record for An-drade. The trial court signed the order October 27, 2011, denying Smith’s motion to withdraw.
Due to deficiencies in the motion, Louisiana District Court Rule 9.18(d) was not applicable. Smith did not supply the court with the written consent of Andrade plus that of all parties or their respective counsel. Additionally, there was no indication the Clerk of Court had been supplied with Andrade’s last known address and no certificate from Smith that he had complied with Rule 9.13. This motion to withdraw was made only three weeks before the trial date. The October 26, 2011, minutes of court reflect the denial was made in open court where the trial court noted that a motion to substitute counsel would have to be filed. See Louisiana District Court Rule 9.13(h). The record does not contain such a filing.
This record contains no transcript of the hearing at which Smith was required to establish good cause for the withdrawal. The letters accompanying his motion to withdraw were vague and unclear as to the nature of the dispute alleged. Smith repeatedly failed to use correct procedural vehicles to terminate his representation of Andrade.[7] We cannot say that the trial court erred in denying Smith’s requested withdrawal as attorney for Andrade.

Plaintiffs’ Motion to Quash

Although defendants labeled this section of their brief “Trial Court’s _|_yError in Granting Plaintiffs’ Motion to Quash Subpoenas of Plaintiff, Johnson, and Plaintiffs’ Handwriting Expert,” their only argument addresses deposing Johnson in his home due to his physical condition.
URCA 2-12.4 states, in pertinent part: “All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.” Because defendants did not include in brief argument on the testimony of plaintiffs’ handwriting expert, we consider that assignment abandoned. Entergy Louisiana, Inc. v. James, 42,826 (La.App.2d Cir.1/23/08), 974 So.2d 838.
*601 Even though the defendants intentionally or mistakenly omitted briefing their complaint about Robert Foley’s testimony that Tabe signed the personal guaranty, we note that the record clearly shows that defendants were properly notified of Foley’s participation. Plaintiffs supplied defendants documentation of Foley’s examination of and report about Tabe’s signature. Additionally, plaintiffs made Foley available for deposition on a date selected by the defendants, who neither gave notice nor appeared for the deposition. Additionally, they failed to pay Foley’s required pre-deposition fee. The trial court did not err in permitting Foley’s testimony.
Plaintiffs asserted that Johnson was too ill to leave his home to be deposed. Defendants acknowledged in brief that they agreed to take Johnson’s deposition at his home if plaintiffs supplied proof that he was medically unable to attend a deposition elsewhere. Plaintiffs supplied a 112physician’s letter stating that Johnson was unable to attend a deposition. Defendants contend that was inadequate information. On August 22, 2011, plaintiffs filed a motion to quash, which was granted by the trial court in a August 29, 2011, judgment.
The trial court has broad discretion to regulate pretrial discovery. Absent a clear abuse of that discretion, the trial court’s decision will not be disturbed on appeal. Bell v. Treasure Chest Casino, L.L.C., 06-1538 (La.2/22/07), 950 So.2d 654. Based upon this record, we find no abuse of the trial court’s discretion in resolving discovery disputes.

Admission into Evidence of Invoices for Repairs Paid for by Plaintiffs

The defendants contended that the invoices placed into evidence by plaintiffs for repairs to the property were neither clear nor understandable. Because workers from the companies making the repairs were not called to testify and because the testimony of Johnson’s secretary of many years was allegedly insufficient, defendants argued that the invoices should not have been admitted.
Ruth Beeson testified that she had been employed by Johnson for 89 years as his secretary in his extensive commercial real estate development business which leased as many as 150 properties to food franchises. Among her responsibilities were typing leases as directed by Johnson, collecting rental payments, preparing correspondence, and paying mortgages. Mrs. Beeson explained that she kept track of payments and bills by maintaining a separate record on each property on which she logged rent, maintenance and repairs, bills, and payments. To determine what rent had been paid, bills | ^received and payments made for repairs at 3224 Louisville Avenue, she maintained a file on that property on which she posted the information.
Due to Johnson’s declining health in recent years, Mrs. Beeson worked in the office while speaking to Johnson by phone numerous times per day. Unless Johnson was not able to see her, Beeson’s practice was to go to the Johnsons’ home at the end of almost every workday to deliver mail, telephone messages, and paperwork. Johnson handled lease provision issues with tenants while the Johnsons’ son, Jay, managed the property on a daily basis, which included showing properties, collecting rents, addressing problems, and primarily dealing with the tenants.
Specifically, Mrs. Beeson produced the invoices for plumbing work done for Pueblo Viejo by All Plumbing, Inc., along with identifying the checks written to pay those bills. Some checks were partial payments *602 because Johnson specifically instructed Mrs. Beeson as to the amount he wanted to pay each time he authorized her to write a check.
Mrs. Beeson had personal knowledge of the receipt of invoices, the preparation of payment, the coding of each check to an invoice, and the mailing of the payment, all of which were included in records she maintained in the normal course of business. Mrs. Beeson also identified checks prepared for insurance premiums on the leased property, checks to the City of Monroe for a certificate of occupancy, and an Entergy check for temporary power.
The trial court correctly admitted the evidence of plumbing repairs and other payments noted above, finding that Mrs. Beeson had sufficient 1 uknowledge to testify as to those matters. La. C.E. art 803(6) provides that records of regularly conducted business activities are not excluded by the hearsay rule. Third party invoices are admissible to prove amount of damages. When received and maintained in the course of business, the invoices and bills are considered incorporated business records admissible under the business records exception to the hearsay rule in situations demonstrating trustworthiness. Bishop v. Shaw, 43,137 (La.App.2d Cir.3/12/08), 978 So.2d 568.
In Bishop, supra, a dispute over charges on a cost-plus construction contract, this court found that the trial court did not abuse its discretion in admitting the third party invoices. Bishop and his bookkeeper testified about receiving, categorizing, entering and processing charges for services and material which incorporated the invoices into his business records. Bishop, supra.
In addition to Mrs. Beeson’s testimony, Johnson testified that his commercial leases usually were “net, net, net” terms which meant the lessee accepted the premises “as is,” was financially responsible for all maintenance and repairs to the property, and paid the property taxes on the property. In this lease, the “as is” condition applied and the lessees were responsible for all repairs except for the previously noted exceptions.[8]
Jay showed the property several times to Andrade. After Andrade viewed and liked the property, he was given a key to facilitate showing the property to his partner, Tabe. Defendants negotiated a modification in | ifiwhich the lessors agreed to be responsible for property taxes. Johnson stated he was primarily involved in negotiating the lease while his son Jay was more involved after the lease was signed and the business began.
In his contact with Andrade, Johnson said it was clearly established that defendants were financially responsible for repairs and improvements paid for by the plaintiffs. Jay handled the day-to-day requests for assistance with repairs and kept his father informed daily. After defendants ceased making rent payments, Tabe visited Johnson and requested to be released from the lease. Johnson explained that a deal was a deal and stated: “Once you tattoo or sign a lease, ..., you’re on it.”

Testimony of Jay Johnson Concerning the Terms of the Lease

A licensed realtor, Jay handled the day-to-day management of his parents’ extensive commercial real estate holdings. Because Jay was not a party to the lease, defendants objected to his testimony about the terms of the lease. Jay, Johnson, and Mrs. Beeson all testified that Jay was *603 closely involved in the negotiation and management of this lease.
Jay stated that he was directly involved with showing the property several times to Andrade, discussing the lease terms with Andrade and Johnson, supplying a key so Andrade could show the site to Tabe, and dealing with problems after the lease was signed. Jay reported the defendants had opportunities to inspect closely and independently the premises before the lease was executed.
The majority of his plaintiffs’ leases contained similar obligations. Any variation from the usual “net, net, net” lease terms had to be |1fiapproved by his father. In this case, the defendants negotiated that the plaintiffs were responsible for paying the property taxes on the property. No variation was made to the “as is” provision of the lease.
Jay identified the invoices plaintiffs placed into evidence covering plumbing work for which the plaintiffs made payments and described the work performed under each. Jay explained that his father, in an effort to help defendants have a successful operation, agreed to pay for certain improvements with the understanding that defendants were responsible for repaying plaintiffs for the funds expended.
Typically, Andrade called Jay to request certain work be performed, and Jay would call his father to discuss it, after which plaintiffs authorized the job and Jay contacted the appropriate vendor to do the work. In addition to helping the defendants, who frequently stated they did not have the funds for the work requested, the plaintiffs also wanted to avoid any liens for unpaid bills being filed against their property. Jay testified that at no time did Andrade object to the requirement that defendants were responsible to repay the plaintiffs for the costs borne by plaintiffs.
La. C.E. art. 602 states, in pertinent part: “A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.” This record contained ample proof that Jay gave appropriate testimony based upon his personal knowledge. The witness was very familiar not only with the lease terms but also with the all the matters 117involved in this litigation from the defendants’ initial contact until and after defendants abandoned the leased property. The trial court correctly admitted his testimony.

Quantum

Asserting that plaintiffs did not prove the amount allegedly owed by them, defendants claimed, without authority or particularity, that the amount awarded was not established at trial and the calculation of quantum was unclear. The record simply does not support this.
In addition to the lease, plaintiffs presented at trial the personal guaranty, a requirement mandated by plaintiffs for all their property leases. Signed in October 2006, the lease provided that $4,400.00 in monthly rental was to be paid beginning in March 2007 through January 31, 2012. The free occupancy period was to assist defendants as they prepared the property (previously a Chinese restaurant) for opening as a Mexican restaurant, a period in which the defendants had no income. Tabe testified that the rent of $4,400.00 was last paid in September 2010 and that lease payments were owed through the end of the lease. The testimony of Mrs. Beeson, Tabe, and Jay was that the defendants owed 16 months’ rent. The total was $70,400.00, which we find was properly awarded by the trial court.
*604 As to the repairs award of $31,582.91, the testimony established the clear and unambiguous terms of the lease, including the provision that the defendants accepted the premises “as is” and were responsible for maintenance. Mrs. Beeson and Jay both testified about the services obtained, the receipt of the invoices, and the checks by which payments |iswere made. From that specific testimony and documentation, the record supports that the amount awarded, $31,582.91, was attributable to items which were the responsibility of defendants.
The lease terms required defendants to maintain specific insurance coverage on the leased premises. Mrs. Beeson stated that she was instructed by Johnson to obtain insurance coverage on the leased property to replace defendants’ lapsed insurance coverage. Her testimony detailed the coverage obtained and the premiums the plaintiffs paid. The invoices and checks in payment identified and placed into the record provide a reasonable factual basis for the trial court’s award of $3,007.25 for insurance.

Suspensive Appeal Bond

La. C.C.P. art. 2088(A)(5) states:
The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
(5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126[.]
Appeals are favored. Overmier, supra. No security is required for a de-volutive appeal. La. C.G.P. art. 2124(A). Suspensive appeals are treated as devolu-tive when the appellant fails to pay the suspensive appeal bond. See State v. Simmons, 521 So.2d 749 (La.App. 2d Cir.1988). The parties have continued to litigate in the trial court issues pertaining to the | ^sufficiency and timeliness of defendants’ suspensive appeal bond. Much of this has occurred after this appeal was granted and the record was lodged in this court. Those matters are not a part of the appellate record. The trial court has jurisdiction to test the solvency of the surety and consider other objections to form, substance, and sufficiency of the defendants’ suspensive appeal bond. La. C.C.P. art. 2088(A)(5). We decline to address plaintiffs’ complaints about the suspensive appeal bond.

Attorney Fees for Appeal

Plaintiffs answered the appeal and sought attorney fees for defending plaintiffs against defendants’ appeal. At oral arguments before this court on January 14,-2013, plaintiffs’ counsel filed an affidavit and time records seeking $1,773.54 advanced by the attorneys for costs and attorney fees in the amount of $13,580.00. The trial court generously awarded plaintiffs’ counsel $22,138.50 in attorney fees and costs of $5,282.70 for the litigation at the trial level. We find an additional award of $2,000.00 is sufficient for the defense of this appeal.
DECREE
The judgment of the trial court is affirmed in all respects. Defendants are cast with $2,000.00 for legal fees and asso- *605 dated costs incurred by their attorneys. Defendants are assessed with appellate court costs.
AFFIRMED.
SEXTON, J. (Ad Hoc), concurs.

. The trial court amended the judgment to include a fee for the interpreter appointed by the court to assist one of the defendants, Andrade, who apparently did not speak or read English well enough to fully understand the court proceedings.

. Defendants stated that inclement weather prevented their attorney from attending the initial hearing.

. The lease contained two exceptions: the lessors were responsible for the roof and for replacement of the air conditioning system should the one in place become irreparable. The record shows that, during defendants’ occupancy, the plaintiffs replaced the air conditioning system at an estimated cost exceeding $27,409.00.

. See Footnote # 1.

. Rule 9.13. Withdrawal as Counsel of Record
Enrolled attorneys have, apart from their own interests, continuing legal and ethical duties to their clients, all adverse parties, and the court. Accordingly, the following requirements govern any motion to withdraw as counsel of record:
(a) The withdrawing attorney who does not have written consent from the client shall make a good faith attempt to notify the client in writing of the withdrawal and of the status of the case on the court’s docket. The attorney shall deliver or mail this notice to the client before filing any motion to withdraw.
(b) If the action or proceeding has been assigned to a particular section or division of the court, then the motion to withdraw shall be submitted to the judge presiding over that section or division.
(c) Any motion to withdraw shall include the following information:
(1) The motion shall state current or last-known street address and mailing address of the withdrawing attorney's client. The withdrawing attorney shall also furnish this information to the clerk of court.
(2) If a scheduling order is in effect, a copy of it shall be attached to the motion.
(3) The motion shall state whether any conference, hearing, or trial is scheduled and, if so, its date.
(4) The motion shall include a certificate that the withdrawing attorney has complied with paragraph (a) and with Rule 1.16 of the Rules of Professional Conduct, Louisiana State Bar Association, Articles of Incorporation, Art. 16. A copy of the written communication required by paragraph (a) shall be attached to the motion.
(5) If the motion is to withdraw upon completion of a limited appearance, the motion shall include a certification by the withdrawing attorney that the agreed upon limited services have been completed and that the withdrawing attorney has submitted all judgments or orders resulting from the limited appearance as ordered by the court. A copy of the relevant Notice of Limited Appearance shall be attached to the motion.
(d) The court may allow an attorney to withdraw by ex parte motion if:
(1) The attorney has been terminated by the client; or
(2) The attorney has secured the written consent of the client and of all parties or their respective counsel; or
(3) A limited appearance, as authorized by Rule 1.2(c) of the Rules of Professional Conduct and consented to by the client, has been completed, or
(4)The case has been concluded.
(e) The court may also allow an attorney to withdraw by ex parte motion if no hearing or trial is scheduled.
(f) If paragraph (d) does not apply, then an attorney may withdraw as counsel of record only after a contradictory hearing and for good cause. All parties and the withdrawing attorney's client shall be served with a copy of the motion and rule to show cause why it should not be granted.
(g) If counsel's withdrawal would delay a scheduled hearing or trial, the court will not allow the withdrawal unless exceptional circumstances exist or limited representation was undertaken pursuant to a Notice of Limited Appearance and completed.
(h) Paragraphs (a) through (f) do not apply to an ex parte motion to substitute counsel signed by both the withdrawing attorney and the enrolling attorney. The following rules govern such a motion:
(1) The court may grant the motion without a hearing. Movers shall furnish the court with a proposed order.
*600 (2) Substitution of counsel will not, by itself, be good cause to alter or delay any scheduled matters or deadlines.

. Smith attached to his three letters to the motion to withdraw: (1) October 19, 2009, letter from the Knight law firm concerning attempts to contact Smith and requesting Smith file an answer in OPUS Broadcasting v. Pueblo Viejo; (2) June 29, 2010, letter from Edwin Theus, Jr., to Smith concerning Tabe’s "extremely vague and ambiguous" allegations about of unauthorized conduct and breach of duties. Since Tabe refused to produce information requested, attend shareholders and directors meetings and communicate with An-drade, Theus stated no amicable solution was possible and Andrade intended to file a petition for involuntary dissolution of Pueblo Vie-jo; and, (3) May 11, 2009, letter from Amado Leija stating Andrade wanted to withdraw from the corporation and was ready to sign any necessary paperwork.

. See Footnote # 5.

. See footnote # 3.