STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-689

DILLON ROMERO AND KRISTIAN BREAUX

VERSUS

ROGER LAGRANGE

**********

APPEAL FROM THE
LAFAYETTE CITY COURT
PARISH OF LAFAYETTE CITY COURT, NO. 2019 CV 0426
HONORABLE DOUGLAS J. SALOOM, CITY COURT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and D. Kent Savoie, Judges.

**AFFIRMED.**

**Sean M. Stockstill**
**921 Kaliste Saloom Road**
**Lafayette, LA 70508**
**(337) 456-1163**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Dillon Romero**
    **Kristian Breaux**

**Roger LaGrange**
**In Proper Person**
**830 Heart D. Farm Road**
**Youngsville, LA 70592**
**(337) 224-0665**

**EZELL, Judge.**

This case involves a written addendum to a contract of sale of a home. Roger LaGrange appeals a trial court judgment which found him responsible for the costs to repair and remediate damage due to a leak in the ceiling. For the following reasons, we affirm the judgment of the trial court.

## FACTS

On October 30, 2018, Dillion Romero and Kristian Breaux (the Purchasers), entered into a contract with Roger LaGrange to purchase his home in Arnaudville. During the due diligence period, they inspected the home and found no issues. On the final walk-through of the home before closing, the Purchasers became concerned about water damage on the ceiling in a spare bedroom. All parties agreed that they would proceed with the closing and an addendum to the contract was signed on the day of closing, November 19, 2018.

At the closing, Mr. LaGrange suggested the name of a person who could perform the remediation. Ms. Breaux testified that she did research on the person suggested after the closing and found no information on him. Therefore, the purchasers did not want to use this person. Ms. Breaux informed her real estate agent, Jamie Parbhoo, of their decision. Ms. Parbhoo then informed Mr. LaGrange's real estate agent, Amir J. Francis, of their decision not to use this person to perform the repairs and remediation. The Purchasers then arranged for DryMax to give them a quote on remediation.

On November 29, 2018, Ms. Parbhoo emailed Mr. Frances that a four-foot-by-five-foot piece of sheetrock was cut out of the ceiling. Mold was found. She indicated that a mold test would need to be performed throughout the home to make sure that the mold had not spread. Inspection Smith was hired to perform the

test. Mr. Francis informed Ms. Parbhoo that Mr. LaGrange considered the Purchasers to be in breach of the addendum since they took it upon themselves to have the work ordered without any communication. Mr. LaGrange refused to pay for the work.

On February 11, 2019, Mr. Romero and Ms. Breaux filed suit against Mr. LaGrange requesting damages in the amount of $2,993, the total amount spent to remedy the ceiling issues. They also requested attorney fees. Mr. LaGrange answered the suit in proper person denying that he owed the Purchasers any money.

On May 13, 2019, Danielle LaGrange, Mr. LaGrange's wife, filed a motion to intervene in the action. This motion was denied on May 21, 2019. A trial in the matter was held on June 20, 2019.

Finding no ambiguity in the addendum and that no testimony was offered concerning which party drafted the addendum, the trial court determined that it had to apply the addendum as written. The trial court found that there were no limitations within the addendum as to the dollar amount that Mr. LaGrange would be responsible for in remediating the ceiling issue. The trial court then awarded damages in the amount of $2,993. Attorney fees were also award in the amount of $2,500. Judgment was signed on July 10, 2019. Mr. LaGrange was granted a suspensive appeal to this court on August 5, 2019, where he asserts four assignments of error.

## CONTRACT INTERPRETATION

In his first assignment of error, Mr. LaGrange argues that the trial court erred in its interpretation of the addendum. Mr. LaGrange contends that when he signed the addendum, he was under the assumption that he, the seller, could start repairs to remedy the ceiling issue followed by an inspection for mold/mildew.

2

The addendum provided:

- Buyer and Seller have agreed to proceed to close prior to repairs.
- Seller to pay for the cost to repair and remedy the cause of the soft Spot/patch on the ceiling by a
    Professional of choice and/or approved company by the buyer; in the bedroom with the blue curtains.
- Seller to pay for inspection while the ceiling is open to confirm no mold/mildew or water
    damage exist. If found, remediation shall be completed at the sellers [sic] expense.
- Seller shall have fifteen (15) days to make repairs.
- Seller to provide receipts and documents of all repairs.
- Seller to return refrigerator in the kitchen.
- Seller agrees to pay any legal fees if the issue is not resolved.

A contract is to be interpreted according to the common intent of the parties. La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "The words of a contract must be given their generally prevailing meaning." La.Civ.Code art. 2047.

This court, in *Clinkscales v. Columns Rehabilitation and Retirement Center*, 08-1312, p. 3 (La.App. 3 Cir. 4/1/09), 6 So.3d 1033, 1035-36 (alterations in original), explained the standard of review regarding the interpretation of a contract as follows:

> Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. (citations omitted).

*Evangeline Parish Sch. [Bd.] v. Energy Contr.*, 617 So.2d 1259, 1265 (La.App. 3 Cir.), *writ denied*, 624 So.2d 1228 (La.1993) (quoting *Borden, Inc. v. Gulf States Utilities Co.*, 543 So.2d 924, 928 (La.App. 1 Cir.), *writ denied*, 545 So.2d 1041 (La.1989)).

Since the trial court in the present case based its findings on an independent review of the contract itself, we must decide whether the trial court was legally correct or legally incorrect in its interpretation of the contract.

The testimony indicates that the parties and their agents discussed the water-damaged ceiling issue prior to closing and that an addendum was drafted to address the issue so they could proceed with the closing. On direct examination by counsel for the purchasers, Mr. LaGrange admitted that he signed the addendum without duress. Mr. LaGrange stated that after the addendum was signed, there was a discussion that a person recommended by Mr. Francis would be used to make the repairs. He admitted that this was not included in the addendum and the parties did not sign anything agreeing to this. He testified that the parties were to come to an agreement as to who was to perform the remediation work.

Ms. Breaux testified that it was not clear who would locate an inspector, as long as the Purchasers approved the inspector. When she researched the name of the person Mr. Francis gave them, she could not find any information on him and did not agree to him performing the work. Mr. Francis acknowledged that an appointment was set up with the recommended person, but the Purchasers called and cancelled because they wanted to use another company.

The Purchasers set up an appointment with DryMax Systems, LLC, who came and inspected the property on November 27, 2018. The company estimated the mold remediation total to be $1,748 to $3,400, depending on the extent of mold damage. Mold remediation was performed by DryMax for a total cost of $1,748. Inspection Smith performed a mold inspection on December 1, 2018, for a fee of $465. The sheetrock was repaired for at a cost of $780. Total cost to repair and remediate was $2,993.

A review of the addendum clearly indicates that the "buyer" gets to choose the company, as it states, "Professional of choice and/or approved company by the buyer." The addendum further provides that Mr. LaGrange is to pay the cost to "repair and remediate" the ceiling issue, including an inspection for mold, mildew, and water damage and the repair of any damage. There is no limitation as to the amount that was to be paid by Mr. LaGrange for remediation and repair of the ceiling issue.

We find that the trial court was legally correct in finding that Mr. LaGrange was responsible for the total cost to repair the ceiling damage and remediate the mold found in the home due to the water leak. Furthermore, only the Purchasers had to approve the company performing the repair and remediation work.

## MOTION TO ANNUL JUDGMENT

Mr. LaGrange filed a "MOTION TO VACATE OR PETITION TO ANNUL FINAL JUDGMENT" on August 26, 2019. He argued that the city court did not have jurisdiction and suit should have been filed in the small claims division city of court based on the amount in dispute.

What Mr. LaGrange fails to recognize is that small claims divisions are part of city courts and have concurrent jurisdiction with the city court up to $5,000. La.R.S. 13:5201(A) and La.R.S. 13:5202(A). This does not deprive the city court of jurisdiction to hear claims where the amount in dispute is $5,000 or less. Therefore, jurisdiction was proper in city court.

## INTERVENTION

Danielle LaGrange, Mr. LaGrange's wife, filed a petition to intervene in the lawsuit. The trial court denied the intervention. Mr. LaGrange claims this was error. He argues that Mrs. LaGrange has an interest in the outcome of the case,

5

since she is his wife. He further argues that she should be allowed to intervene to represent the interests of the marital community, as she is the managing spouse of the community regime. Mrs. LaGrange did not appeal the denial of her petition to intervene.

Pursuant to La.Code Civ.P. art. 1091, a third person can join in a lawsuit to enforce a right related to or connected with the object of the pending action by unity with the defendant in resisting the plaintiff's demand. An intervention may be filed after the answer, with leave of court, "if it will not retard the progress of the principal action." La.Code Civ.P. art. 1033. The trial court has great discretion in deciding whether to allow an intervention after the answer has been filed and in determining whether the intervention will hamper the progress of the suit. *Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. and Indem. Co.*, 19-265 (La.App. 3 Cir. 11/12/19), 284 So.3d 643.

The demand of an intervenor who does not appeal her rejection to intervene is not properly before the court. *Johnson v. Sandifer*, 56 So.2d 762 (La.App. 2 Cir. 1952); *Jenkins v. D.F. Stonebraker*, 201 So.2d 698 (La.App. 2 Cir. 1967); *see also Tolliver v. Broussard*, 14-738 (La.App. 3 Cir. 12/10/14), 155 So.3d 137, *writ denied*, 15-212 (La. 4/17/15), 168 So.3d 401.

Mr. LaGrange cannot assert a claim for failure of the trial court to allow Mrs. LaGrange's intervention. Mrs. LaGrange is the proper party to appeal the dismissal of her petition to intervene.

Although not raised in the trial court, we do recognize that Mr. LaGrange is essentially arguing that Mrs. LaGrange should have been joined in the lawsuit. Louisiana Code of Civil Procedure Article 645 provides that the failure to join a party may be noticed by the appellate court on its own motion.

Since mid–1995, the Louisiana Code of Civil Procedure no longer refers to parties as "necessary" or "indispensable." Rather, the code mandates an analysis of the interests of the joined and non-joined parties with respect to the action to determine whether the action may proceed. *Succession of Populus*, 95–1469, p. 3 (La.App. 1st Cir.2/23/96), 668 So.2d 747, 748.

Louisiana Code of Civil Procedure art. 641, as amended by Acts 1995, No. 662, refers to "parties needed for just adjudication" and provides that a person shall be joined as a party in the action when either: (1) in his absence complete relief cannot be accorded among those already parties; or (2) he claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may (a) impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

*Gewalt v. Stevens*, 98-2666, p. 4 (La.App. 1 Cir. 9/24/99), 757 So.2d 705, 708, *writ denied*, 99-3063 (La. 1/7/00), 752 So.2d 865.

On the day of the closing, both Mr. and Mrs. LaGrange signed an act of cash sale recognizing that the property was the "sole and separate property" of Mr. LaGrange. "The separate property of a spouse is his exclusively." La.Civ.Code art. 2341.

A spouse's undivided interest in property otherwise classified as separate property under Article 2341 remains his separate property regardless of the acquisition of other undivided interests in the property during the existence of the legal regime, the source of improvements thereto, or by whom the property was managed, used, or enjoyed.

La.Civ.Code art. 2341.1(A).

While Mr. LaGrange argues that Mrs. LaGrange managed the community and community money was used to make mortgage payments, Mrs. LaGrange has the right to claim reimbursement from Mr. LaGrange pursuant to La.Civ.Code art. 2366, should she choose to do so. Mrs. LaGrange is not a party needed for judication of the Purchasers' claims against Mr. LaGrange pursuant to an

7

addendum he signed with the Purchasers involving his separate property. This is not an obligation sought to be enforced against community property in which Mrs. LaGrange would be the proper party defendant as the managing spouse of the community. La.Civ.Code art. 735. Complete relief can be accorded in her absence. This assignment of error has no merit.

## EXCLUSION OF EVIDENCE

In his fourth assignment of error, Mr. LaGrange actually asserts several assignments of error regarding excluding evidence and the award of damages of attorney fees. We will address each issue separately.

Prior to trial, the trial court addressed the exhibits. Counsel for the Purchasers objected to the introduction of any exhibits by Mr. LaGrange because he requested trial exhibits through discovery and did not receive them prior to trial. The trial court then decided to proceed to trial and address the exhibits during the trial. Mr. LaGrange sought to introduce some exhibits after his only witness, Mr. Francis, testified. The trial court went through each exhibit. Counsel for the Purchasers stipulated to some of the exhibits, and the trial court excluded some.

On appeal, Mr. LaGrange argues that the trial court erred in excluding Exhibit R, which he claims contains evidence contrary to Ms. Breaux's testimony. The trial court excluded the document, finding that there had been no testimony concerning the document involved. Mr. LaGrange agreed that there was no testimony concerning the exhibit he wanted to introduce.

"The trial court is vested with vast discretion in connection with the admissibility of evidence." *Thibodeaux v. Gulfgate Const., LLC*, 18-676, p. 15 (La.App. 3 Cir. 3/7/19), 270 So.3d 721, 732. "It will not be reversed absent an abuse of that discretion." *Id*.

8

In order for this Court to review evidence deemed inadmissible by the trial court, the party must comply with La. C.C.P. art. 1636 to preserve the evidence. *Tatum v. United Parcel Service, Inc.*, 10–1053 (La.App. 5 Cir. 11/15/11); 79 So.3d 1094, 1104. It is well-settled that error may not be predicated upon a ruling that excludes evidence, unless a substantial right of a party is affected and the substance of the evidence was made known to the court by counsel. *Id.* at 1105. In those instances, it is incumbent upon the party who contends the evidence was improperly excluded to make a proffer; and if the party fails to do so, then that party cannot contend such exclusion was erroneous. *Id.* Without a proffer, an appellate court cannot ascertain the nature of the excluded evidence. *Abadie v. Metro. Life Ins. Co.*, 00–344 (La.App. 5 Cir. 3/28/01); 784 So.2d 46, 86, *writ denied*, 01–1735 (La.12/14/01); 804 So.2d 644, citing *McLean v. Hunter*, 495 So.2d 1298, 1305 (La.1986).

*McMillion v. East Jefferson Gen. Hosp.*, 15-578, p. 7 (La.App. 5 Cir. 5/26/16), 193 So.3d 448, 451-52, *writ denied*, 16-1192 (La. 10/10/16), 207 So.3d 405.

A review of the discussion between the court and counsel for the Purchasers reveals that the document was prepared by Greg Ercoli, who did not testify at trial. Furthermore, Mr. LaGrange agreed that there was no testimony concerning the document. He also failed to proffer the document for this court's review. We cannot find that the trial court abused its vast discretion in refusing to admit Exhibit R.

## DAMAGES

Mr. LaGrange claims that the only three documents provided to him and the trial court to prove the Purchasers' claim for damages are unsupported and insufficient. He claims the documents themselves are suspicious and fail to establish that the services were provided.

At trial, Ms. Breaux testified about the mold remediation performed on the ceiling. She explained that DryMax removed all the mold and then another company, InspectionSmith, performed testing to ensure that all the mold had been removed. The test results were normal, so a sheetrock company came in and

patched the hole in the ceiling. She then explained each bill she received from the companies to perform the work. Invoices from all three companies were introduced without objection from Mr. LaGrange, which included: (1) DryMax invoice for $1,748; (2) Inspection Smith invoice for $465; (3) Sheetrock invoice for $780.

"Generally, the failure to object to evidence admitted during trial constitutes a waiver of the right to object to its admissibility." *Aymami v. St. Tammany Parish Hosp. Serv. Dist. No. 1*, 13-1034, p. 7 (La.App 1 Cir. 5/7/14), 145 So.3d 439, 447. Furthermore, La.Code Evid. art. 803(6) provides that records of regularly-conducted business activities are not hearsay and are admissible. "When received and maintained in the course of business, the invoices and bills are considered incorporated business records admissible under the business records exception to the hearsay rule in situations demonstrating trustworthiness" and are admissible to establish damages. *Johnson v. Pueblo Viejo, Inc.*, 47,586, p. 14 (La.App. 2 Cir. 4/10/13), 134 So.3d 593, 602. We find no error in the trial court's admission of these invoices and its use of them to award damages.

## ATTORNEY FEES

Mr. LaGrange assigns as error the award of $2,500 in attorney fees but does not brief the error except to say, "As far as attorney's fees, $2,500.00? That's just two shakes of a lamb's tail from the amount of damages awarded. LaGrange doesn't even know what to say about that."

We first observe that Mr. LaGrange did not brief this assignment of error. Pursuant to Uniform Rules—Courts of Appeal, Rule 2–12.4, all assignments of error must be briefed. We "may consider as abandoned any specification or assignment of error which has not been briefed." *Id*.

We do observe that the addendum did provide that "Seller agrees to pay any legal fees if the issue is not resolved."  Attorney fees are allowable when provided for by statute or contract.  *Holt v. Ace American Ins. Co.*, 14-380 (La.App. 3 Cir. 10/1/14), 149 So.3d 886.  Furthermore, a trial court's award of attorney fees should not be disturbed on appeal unless there has been an abuse of discretion.  *Camalo v. Courtois*, 19-15 (La.App. 3 Cir. 10/2/19), 280 So.3d 956.

> In any claim for attorney fees, whether by main, incidental demand, or rule nisi, or otherwise, the court shall allow the introduction of all admissible evidence, in accordance with law, including real and documentary evidence and testimony, and shall allow oral and written argument in support thereof, and such evidence, testimony and argument shall be considered by the court in rendering judgment on the demand.

La.R.S. 13:3738.

> The supreme court articulated ten factors to be considered in reviewing the reasonableness of an award of attorney fees:
>
> > (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.
>
> *State, Dep't of Transp. & Dev. v. Williamson*, 597 So.2d 439, 442 (La.1992). The supreme court noted that these factors were derived from Rule 1.5(a) of the Rules of Professional Conduct. *Id*.
>
> Attorney fees should be awarded on a case-by-case basis after examining the factors listed above. "It is not per se unreasonable, as a matter of law, for the attorney fees award to be greater than the award for damages." *Health Educ.& Welfare Fed. Credit Union v. Peoples State Bank*, 11-672 p. 3 (La.App. 3 Cir. 12/7/11), 83 So.3d 1055, 1057 (citing *Dailey v. The Home Furnishings Store*, 02-1225 (La.App. 4 Cir. 9/17/03), 857 So.2d 1051.) [sic].

*Camalo*, 280 So.3d at 962.

Counsel for the Purchasers filed an affidavit of time and expenses with the trial court indicating a total bill of $3,227. However, his contract with the Purchasers limited his fee to $2,500. We find no error in the trial court's award of attorney fees.

For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Roger LaGrange.

**AFFIRMED.**